1  JOHN A. RUSSO, City Attorney, SBN #129729
   RANDOLPH W. HALL, Assistant City Atty., SBN #080142
2  JAMES F. HODGKINS, Supervising Trial Atty., SBN #142561
   CHARLES E. VOSE, Senior Deputy City Atty., SBN #139700
3  KANDIS A. WESTMORE, Deputy City Atty., SBN 194594
   One Frank H. Ogawa Plaza, 6th Floor
4  Oakland, California  94612
   Telephone:  (510) 238-3589, Fax:  (510) 238-6500
5  25581/468207

6  Attorneys for Defendants,
   CITY OF OAKLAND, OAKLAND
7  POLICE DEPARTMENT, CHIEF WAYNE
   TUCKER, SGT. BERNARD ORTIZ

8

9

                 **UNITED STATED DISTRICT COURT**
10
                **NORTHERN DISTRICT OF CALIFORNIA**
11
                    **SAN FRANCISCO DIVISION**
12

13
   MIGUEL ORTEGA, BENJAMIN ORTEGA,          Case No.  C-07-02659 (JCS)
14
                Plaintiffs,                 **DEFENDANTS' NOTICE OF MOTION
15                                          FOR PARTIAL SUMMARY
          v.                                JUDGMENT: NOTICE OF MOTION;
16                                          MEMORANDUM OF POINTS AND
   CITY OF OAKLAND, OAKLAND POLICE          AUTHORITIES**
17 DEPARTMENT, WAYNE TUCKER, In His
   Capacity as the Police Chief of the City of
18 Oakland, RAMON J. ALCANTAR, Individually
   and in his capacity as a Police Officer for the   Date:        September 19, 2008
19 City of Oakland, B. ORTIZ, Individually and in    Time:        9:30 a.m.
   his capacity as a Police Officer for the City of   Dept.:       Courtroom A, 15th Floor
20 Oakland, DOES 1 THROUGH 200,            The Honorable Joseph C. Spero

21              Defendants.

22

23

24

25

26

# TABLE OF CONTENTS

Page No.

I.      INTRODUCTION ........................................................................................1

II.     STATEMENT OF FACTS ..........................................................................2

III.    LEGAL DISCUSSION ...............................................................................6

    A.    Plaintiffs Cannot Prevail on Their § 1981 Claim Because They Failed to Establish Any Intentional Racial Discrimination or Any Deprivation of § 1981 Rights. ...................................................................6

    B.    Plaintiffs cannot maintain a §1983 claim against Ortiz or Chief Tucker. ...................................................................................................9

        1.    Unreasonable Seizure Claim .................................................10

        2.    Excessive Force Claim ..........................................................12

        3.    Right to Privacy Claim ..........................................................14

        4.    First Amendment Claim .........................................................15

    C.    Plaintiffs Cannot Prevail on Their § 1983 Monell Claim Because They Cannot Establish that Their Constitutional Rights Were Violated as a Result of a Policy, Practice, or Custom of the City of Oakland. ..................................................................................................16

    D.    Plaintiffs cannot maintain their assault and battery claims against Ortiz. ......................................................................................................19

    E.    Plaintiffs cannot maintain their California Civil Code §52.1 claim against Ortiz. ...........................................................................................20

    F.    Plaintiffs cannot maintain their California Civil Code §51.7 claim against Ortiz. ...........................................................................................20

    G.    Plaintiffs cannot prove that Ortiz caused an intentional infliction of emotional distress. ..................................................................................20

    H.    Plaintiffs have not established a legal duty owed to them by Ortiz and Chief Tucker that was breached for the purposes of their Negligence claims against them. ...............................................................................21

IV.    CONCLUSION ..........................................................................................22

## TABLE OF AUTHORITIES

Page No.

FEDERAL CASES

Armendariz v. Penman, 75 F.3d 1311, 1322 (9th Cir. 1996).......................................................14

Arpin v. Santa Clara Valley Transportation Agency, 261 F.3d 912, 922 ............................17, 23

Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990) .................................................................14

Beck v. Ohio, 379 U.S. 89, 91 (1964)........................................................................................14

Board of Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404
(1997) ..................................................................................................................................21, 22

Brew v. City of Emeryville, 138 F. Supp. 2d 1217, 1224 (N.D. Cal. 2001)..............................11

Cervantes v. United States, 330 F.3d 1186, 1188 (9th Cir. 2003) .............................................15

Cholla Ready Mix v. Civish, 382 F. 3d 969, 977-978 (2004)................................................11, 12

Davis v. Ellensburg, 869 F.2d 1230 (9th Cir. 1989) .................................................................21

Galvin v. Hay, 374 F.3d 739, 758 (9th Cir. 2004) .....................................................................15

Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1196 (9th Cir. 2002)................................22

Gilette v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992).........................................................21

Graham v. Connor, 490 U.S. 386, 394 (1989) .....................................................................14, 16

Gregory v. County of Maui, 523 F.3d 1103 .............................................................................16

Jackson v. City of Bremerton, 268 F.3d 646, 651-52 (9th Cir. 2001).......................................16

Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001).................................................13

Macri v. King County, 110 F.3d 1496, 1499 (9th Cir. 1997).....................................................14

McDade v. West, 223 F.3d 1135 (9th Cir. 2000) ......................................................................23

Meehan v. Los Angeles County, 856 F.2d 102 (9th Cir. 1988) .................................................21

Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).........20, 21

Morgan v. The District of Columbia, 550 F. Supp. 465, 467 (D. D.C. 1982), aff'd, .................11

Mt. Healthy City School District Board of Educ. v. Doyle, 429 U.S. 274, 287 (1977)..............19

Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985) .................................................................22

Oviatt v. Pearce, 954 F.2d 1470 (9th Cir. 1992) .................................................................20, 22

Schweiker v. Wilson, 450 U.S. 221, 227 (1981).......................................................................13

Tennessee v. Garner, 471 U.S. 1, 8 (1985) ...............................................................................16

Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996)..................................................................21

Ulrich v. City and County of San Francisco, 308 F.3d 968, 985 (9th Cir. 2002) .................20, 21

Virginia v. Moore, 128 S.Ct. 1598, 1607 (2008) ......................................................................15

## STATE CASES

Benavidez v. San Jose Police Department (1999) 71 Cal.App.4th 853, 859 ..............................25

Brummett v. County of Sacramento (1978) 21 Cal.3d 880, 887................................................25

Davidson v. City of Westminster, 32 Cal.3d 197, 185 Cal.Rptr. 252, 649 P.2d 894,
    901 (1982) ........................................................................................................................24

Harris v. Smith (1984) 157 Cal.App.3d 100, 104 ........................................................................25

Williams v. State of California (1983) 34 Cal.3d 18, 23-24 ........................................................25

## FEDERAL STATUTES

42 U.S.C. § 1981 ..................................................................................................................10, 12

42 U.S.C. § 1981(a)....................................................................................................................11

42 U.S.C. § 1981(b)....................................................................................................................12

42 U.S.C. § 1983 ........................................................................................................................20

U.S. Const. amend. IV ................................................................................................................14

## STATE STATUTES

Cal. Govt. Code § 820.4 ..............................................................................................................25

California Civil Code §§ 51.7 ........................................................................................................5

California Civil Code §51.7 ......................................................................................................1, 24

California Civil Code §52.1 ......................................................................................................1, 24

Civil Code §51.7............................................................................................................................24

Govt. Code §815(a) ....................................................................................................................26

Penal Code §836(a) ....................................................................................................................15

Penal Code Section 148..........................................................................................................6, 12, 15

## FEDERAL RULES

Federal Rule of Civil Procedure Rule 56(b)..................................................................................5

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on **September 19, 2008, at 9:30 a.m.** or as soon as the matter may be heard in Courtroom A of the above captioned Court, located at 450 Golden Gate Avenue, 15th floor, in San Francisco, California, Defendants CITY OF OAKLAND, et al. will and hereby does move the Court for an order, for partial summary judgment pursuant to Federal Rules of Civil Procedure Rule 56(b) and (c)..

This motion is based on this Notice, the accompanying memorandum of points and authorities, request for judicial notice, declarations, supporting evidence, the court files of this case, and any evidence or argument the Court may entertain at the hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendants City of Oakland, Police Chief Wayne Tucker (sued in his official capacity), and Officer Bernard Ortiz ("Defendants") hereby submit the following Memorandum of Points and Authorities in Support of their Motion for Partial Summary Judgment.

On September 7, 2007, Plaintiffs Mr. Benjamin Ortega and Mr. Miguel Ortega filed the first amended complaint for damages for violation of civil rights against the defendants City of Oakland, Officer Ortiz, and Police Chief Wayne Tucker, listing nine causes of action, including constitutional violations under Title 42 of the United States Code §§1981, 1983 based on violations of their right to privacy, freedom of expression under the First Amendment, the right to be free from unreasonable searches and seizures under the Fourth Amendment, and to be free from excessive force under the Fourth, Fifth and Fourteenth Amendments, California Civil Code §§ 51.7 and 52.1, and various California common law torts (including assault, battery, intentional infliction of emotional distress, and negligence). Plaintiff prayed for general damages, special damages, punitive damages, exemplary damages, reasonable attorney fees, and cost of the suit.

Plaintiffs subsequently, without leave of court, alleged new cause of action "negligent selection, training, retention, supervision, investigation, and discipline" when they filed their second amended

1

1  complaint ("SAC") on November 27, 2007 against Chief Tucker and the City.  Defendants' Motion

2  to Strike the improperly added cause of action is pending before this court and scheduled to be

3  heard on the same day as this motion. Plaintiffs' motion to compel the deposition of Chief Tucker

4  filed on July 18, 2008 was denied by Judge Spero on July 29, 2009.

5      As demonstrated below, On May 7, 2006, Plaintiff Miguel Ortega threatened Officer Alcantar

6  while he was detaining his brother Benjamin.  Officer Ortiz intervened and detained Miguel Ortega

7  before Miguel could take any action against Alcantar.  Miguel now claims his arrest and/or

8  detention was unlawful and that he was subjected to excessive force.

9      Defendants contend Officer Ortiz lawfully detained Miguel Ortega with probable cause based

10  on Penal Code Section 148 (delaying or obstructing a police officer) and shortly released him

11  without a citation and that only reasonable force to affect the detention was used by Ortiz. In

12  addition, there are no allegations in the SAC or evidence in the record of the existence of a contract

13  nor any evidence that Ortiz or Chief Tucker interfered with plaintiffs' rights to sue or present

14  evidence such that §1981 would be applicable to Plaintiffs' claims against defendants.

15      Finally, as developed at length below, there is no evidence in the record to establish any

16  wrongdoing on the part of Chief Tucker or to show a policy of the City of Oakland was the moving

17  force behind any of Plaintiffs' purported constitutional injuries, and the City is entitled to judgment

18  in its favor accordingly.

19      As such, Defendants seek partial summary judgment as to all claims against Ortiz and Chief

20  Tucker and the §1983 and §1981 claims against the City.

21                  **II.  STATEMENT OF FACTS**

22      On May 7, 2008, Officers Ortiz and Alcantar were assigned to OPD Unit 20A61 ("Blue

23  Delta Team") to patrol International Blvd. and to disperse crowds after the Cinco de Mayo festival.

24  (Joint Statement of Undisputed Facts (JSUF), No. 1.)  On that day, Plaintiff Benjamin Ortega went

25  to the intersection of 62nd Avenue and International Boulevard with a group of more than 10 people

26  to be with his cousins. (JSUF No. 2.)  Plaintiff Miguel Ortega was part of that group as were

2

1   Genesis Preciado, Eduardo, Jaime, Luis, and others. (JSUF No. 3.)  The other people in the group

2   were Benjamin's cousins and friends who lived near his cousins' house. (JSUF No. 4.)  When

3   Benjamin walked to 62nd Avenue and International Boulevard, he was carrying a Mexican flag.

4   (JSUF No. 5.)  When he arrived at the intersection, his friend arrived and they went to McDonald's.

5   (JSUF No. 6.)

6        After Benjamin left McDonald's, he carried the flag to the house on 62nd Avenue. (JSUF

7   No. 7.)  He stayed at the house for 5 minutes and then went back to the intersection of 62nd Avenue

8   and International and stood at the intersection with his cousins for more than half an hour. (JSUF

9   No. 8-10.) He entered the intersection and crossed the street carrying the flag. (JSUF No. 11.)

10       Officer Ortiz decided to cite Benjamin for suddenly stepping form the curb. (JSUF No. 12.)

11  During his deposition, Ortiz identified Benjamin as the person who was carrying the flag. (JSUF

12  No. 13.) The officers reported to radio dispatch that a "large group" refused to leave the corner and

13  two backup units were requested.  (JSUF No. 15.) Officer Ortiz was cussed at by someone in the

14  group and was called a coconut.  "Coconut" is an ethnic reference as one being brown on the

15  outside and white on the inside. (JSUF No. 16.)

16       Officer Ortiz got out of the car and started walking toward the intersection heading toward

17  the flag carrier. (JSUF No. 17.)  The officers told Benjamin to come to them or to stop while he was

18  with the crowd but Benjamin continued to walk with the group. (JSUF No. 14, 29.)  The crowd

19  went down 62nd Avenue on foot and headed into the front yard of the property located at 1387

20  62nd Avenue and Miguel went inside the house. (JSUF No. 18.)  Officer Ortiz followed the group.

21  The crowd entered into the yard of the yellow house. (JSUF No. 19.)  Officer Alcantar entered the

22  fenced yard first and Officer Ortiz entered after him. (JSUF No. 20.)  Officer Ortiz entered the yard

23  because Officer Alcantar was dealing with Benjamin Ortega with the flag inside the yard. (JSUF

24  No. 21.)

25       Benjamin testified that he gave the flag to a friend and never crossed or walked into the

26  intersection. But Preciado and Miguel saw him walking with the flag across International Blvd.

1    (JSUF No. 22.) And according to Benjamin's own testimony he was crossing International Blvd. in

2    a crosswalk when Alcantar first spoke to him. (JSUF No. 27.) He also claims he first made contact

3    with Officer Alcantar and Ortiz when he was coming back to the house on 62nd Avenue from

4    McDonald's holding the flag. (JSUF No. 23, 24.)

5        Benjamin further testified that from inside his vehicle, officer Alcantar told him to "throw

6    that flag before I shove it up your ass." (JSUF No. 25.) He also says he was alone during this

7    encounter with Officer Alcantar. But Preciado and Miguel testified that they witnessed the

8    encounter. (JSUF No. 26.)

9        From Ortiz's perception, Alcantar was gong to cite Benjamin for Penal Code §148

10    (obstructing a police officer in the line of duty) and was going to detain him. (JSUF No. 29.)

11    Officer Ortiz observed Officer Alcantar confronting the Benjamin, and then his (Ortiz) attention

12    was immediately diverted to Miguel Ortega who was coming off the porch to come at Officer

13    Alcantar. (JSUF No. 30.)

14        Miguel saw Officer Alcantar grab Benjamin and screamed at Officer Alcantar telling him to

15    let Benjamin go or he "was going to get into it," and then came down the steps off the porch. (JSUF

16    No. 31.) Miguel was going to "go out against Alcantar" and was stopped from getting to Alcantar

17    and his brother by "the policemen." (JSUF No. 32.) Officer Ortiz immediately stepped in and

18    detained Miguel before Miguel could reach Officer Alcantar. (JSUF No. 33.) Officer Ortiz viewed

19    the situation as an officer safety concern and his job was to stop Miguel from interfering with

20    Officer Alcantar arresting Benjamin. (JSUF No. 34.) Officer Ortiz grabbed Miguel by the arm or

21    back, spun him around and handcuffed him and took him out of the yard and put him in a patrol car.

22    (JSUF No. 35.) Miguel testified that he was thrown to the ground when he was handcuffed but

23    Officer Ortiz does not believe Miguel went to the ground. (JSUF No. 36.)

24        Miguel did not resist arrest. (JSUF No. 37.) No citations were issued to either plaintiff.

25    (JSUF No. 38.) Miguel claims he felt what he thought was a pistol to his head but later learned from

26    his cousin that it had been an "electric one." (JSUF No. 39.) Eduardo Ortega had witnessed a "big

black tough officer" pull a gun, identifying the gun as a "Taser gun," an "electric gun," and a "plastic gun," placed at the back of Miguel's "neck." (JSUF No. 40.)  Officer Ortiz, however, is not a "big black man."  He is Mexican and Puerto Rican and has a very light complexion. (JSUF No. 41.) Alcantar speaks Spanish and is also Hispanic with a light complexion. (JSUF No. 51-52.)

Moreover, Officer Ortiz was not carrying a Taser that day.  And he had not been trained nor authorized to carry a Taser weapon prior to May 7, 2006. (JSUF No. 42.)  Neither Ortiz's nor Alcantar's assignment include the issuance of a Taser.  (JSUF No. 43.)

Miguel does not know which officer put handcuffs on him, but identified Officer Ortiz as the officer who took him to the patrol car. (JSUF No. 44.) According to Miguel, Officer Ortiz asked him "So you think you're a big man, huh?" and Miguel replied "Just tighten them [the handcuffs]" twice. (JSUF No. 45.) Other officers were showing up at this time. (JSUF No. 46.) Officer Ortiz ran a "wants-and-warrants check" on Miguel Ortega and it came back clear. (JSUF No. 47.)  Officer Ortiz released Miguel from the patrol car without a citation after approximately ten to thirty minutes. (JSUF No. 48.)

Miguel does not recall which officer mentioned immigration. (JSUF No. 50.)  And there is no evidence in the record that Officer Ortiz made any statements in an attempt to reach an agreement with either Plaintiffs that he would release them in return for agreement from them not to sue him.

Officer Ortiz has three complaints sustained against him, two of which are for not putting the ending mileage on the radio and one for handcuffing a suspect when he should not have. (JSUF No. 53.)

The department has general order guidelines for use of physical force by officers and for crowd control. (JSUF No. 54.)  The Oakland Police, Departmental General Order (DGO), Use of Force Policy Manual, section K-3 describes the force types, and section K-4 is the report writing version of it. (JSUF No. 55.) The use of force policy in effect at the time of this incident is set forth in the OPD Use of Force Policy Handbook at DGO K-3. (JSUF 57.) "Reasonable Force" guidelines

1    enumerated in the United States Supreme Court case *Graham v. Conner* is located in Departmental

2    General Order (DGO), section K-3 at page 1.4. (JSUF 56.))

3        The OPD policy regarding contacts, detentions and arrests in effect since 1989 is contained

4    in the OPD Training Bulletin – General Order A-7. (JSUF 57.) It sets forth the policy regarding

5    detentions including grounds for detentions, detention procedure and probable cause. (JSUF 58.)

6        Miguel does not remember seeking any psychological counseling resulting from this

7    incident even though he "sometimes" experiences anxiety or stress when he sees police officers.

8    He also has not discussed this with anyone. (JSUF No. 59.)  After the incident, he did not tell

9    anyone about his injuries. (JSUF 60.) In addition, Miguel did not seek any kind of medical

10   treatment for his alleged injuries to his back and ribs. (JSUF 61.)  And ultimately, no evidence of

11   injuries was provided for Miguel despite earlier requests for production through interrogatories and

12   deposition. (Vose Decl. at par. 7.) After the incident, Miguel held various jobs including removing

13   asbestos, grinding cars, working with machinery and cleaning offices and stores. (JSUF No. 62.)

14           **III.    LEGAL DISCUSSION**

15   **A.    Plaintiffs Cannot Prevail on Their § 1981 Claim Because They Failed to**
16          **Establish Any Intentional Racial Discrimination or Any Deprivation of § 1981 Rights.**

17       The SAC fails to state or allege any facts sufficient to show the defendants City, Officer

18   Ortiz or Chief Tucker (sued in his official capacity) (1) intentionally "engaged in the ethnically

19   motivated misuse of government power," and 2) intentionally "deprived plaintiffs of [his] rights

20   protected by 42 U.S.C. § 1981, to the full and equal benefit of all laws and proceedings for the

21   security of persons and property as is enjoyed by Caucasian citizens, and to be subject to like

22   restrictions, punishment, pains, penalties, and exactions of every kind, and to no other." Second

23   Amended Complaint ¶¶ 27-29.

24       Title 42 of the United States Code, §1981(a) provides: "All persons . . . shall have the same

25   right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal

26   benefit of all laws and proceedings." 42 U.S.C. § 1981(a).  *See Brew v. City of Emeryville*, 138 F.

1    Supp. 2d 1217, 1224 (N.D. Cal. 2001); *See also Cholla Ready Mix v. Civish*, 382 F. 3d 969, 977-

2    978 (2004) (discussing racial discrimination in making and enforcement of contracts).  In effect,

3    Section 1981 prohibits racial discrimination through state or private action, and requires a showing

4    of intentional discrimination on account of race. *Brew*, 138 F. Supp. 2d at 1224 (citing *Evans v.*

5    *McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989)).

6         Furthermore, a claim of false arrest cannot typically provide the basis for a section 1981

7    claim. *See Morgan v. The District of Columbia*, 550 F. Supp. 465, 467 (D. D.C. 1982), *aff'd*, 725

8    F.2d 125 (D.C. Cir. 1983) (The court was unaware "how plaintiffs' allegedly false arrest can be

9    considered either a racially discriminatory action on a contract or a discriminatory effort to deny

10   plaintiffs their right to sue, be parties, [and] give evidence.") (cited in *Brew*, 138 F. Supp. 2d at

11   1224).

12        **1.  Intentional Racial Discrimination and False Arrest.**

13        There are no allegations in the SAC showing any intentional discrimination on account of

14   race.  Officer Ortiz is of Mexican and Puerto Rican heritage, and Alacantar is Hispanic and speaks

15   Spanish.  The officers were assigned to disperse crowds after the Cinco de Mayo festival on May 7,

16   2006. They were faced with a large crowd on the corner of 62nd Avenue and International Blvd. that

17   refused to leave, and Benjamin Ortega who was carrying a Mexican flag was about to be cited for

18   suddenly stepping into the intersection. When Officer Ortiz tried to disperse the crowd, someone

19   from the group cussed at him and called him a "coconut," a derogatory ethnic and racial reference.

20   When the officers asked Benjamin to stop and come to them, Benjamin proceeded with the crowd

21   to the front yard of a house on 1387 62nd Avenue.  Benjamin was detained in the yard by Officer

22   Alcantar.

23        Miguel then came down the steps off the porch from inside the house, screaming at Officer

24   Alcantar, telling him to let Benjamin go or he "was going to get into it," and Officer Ortiz

25   intervened for officer safety and detained Miguel before he could reach Officer Alcantar. The

26   evidence reveals no intentional discrimination on account of race when Officer Ortiz intervened and

1   detained Plaintiff Miguel Ortega for interfering with the arrest of Benjamin Ortega under Penal

2   Code Section 148. None of these occurrences involving Officer Ortiz were acts of intentional

3   engagement of ethnically motivated misuse of government power or intentional deprivation of the

4   plaintiff's same rights as Caucasians. Rather, any person, regardless of any race, who interferes

5   with a police officer in the line of duty like Miguel Ortega admittedly tried to do would be in

6   violation of Penal Code Section 148.

7      Beyond stating a Mexican flag was involved on the day of a Cinco de Mayo festival,

8   Plaintiffs do not allege any racial animus against the defendant Officer Ortiz. (SAC ¶ 2.)

9   Furthermore, Officer Ortiz never mentioned anything about race or immigration. And there is no

10  evidence to the contrary. Indeed, Miguel doesn't attribute any specific statement to Ortiz at all

11  about race and can't remember which officer said anything about immigration. And even if some

12  mention of immigration had been made, without more, there is no evidence that the actions taken

13  by Ortiz who is also Mexican were motivated by racial animus. The lack of evidence discussed

14  above fails to support a Section 1981 claim of intentional discrimination on account of race,

15  especially when Officer Ortiz lawfully arrested and detained Miguel Ortega for interfering with the

16  arrest of his brother Benjamin. Moreover, a claim of false arrest is not a basis for Section 1981

17  claim under *Morgan*. *Brew*, 138 F. Supp. 2d at 122.

18                    **2. Rights Protected by § 1981.**

19     Plaintiffs vaguely allege deprivation of rights protected by §1981. (SAC ¶ 28.) Section

20  1981 protects the right to make and enforce contracts, to sue, to be parties, to give evidence, and to

21  the full and equal benefit of all laws and proceedings. 42 U.S.C. § 1981. (*See* 42 U.S.C. § 1981(b

22  for the definition of "make and enforce contracts.")

23     Plaintiffs makes no allegations of the existence of a contract at all let alone an interference

24  with the enforcement of one. *See Cholla*, 382 F. 3d at 977-978 (2004) (discussing racial

25  discrimination in making and enforcement of contracts). Plaintiff Miguel Ortega has not had his

26  right to sue interfered with, as he brings this suit today. There is no evidence in the record that

1  Officer Ortiz ever attempted to reach an agreement with either of the Plaintiffs that he would

2  release them in exchange for an agreement from them not to sue him. Plaintiffs make no allegations

3  of being prevented from giving evidence by any acts of Ortiz.

4      Therefore as a matter of law, this Court should grant defendants' motion for summary

5  judgment as to plaintiffs' third cause of action against Bernard Ortiz. The record is even more void

6  of any allegations or evidence of Chief Tucker being involved in the interference with Plaintiffs'

7  rights under §1981 in any manner whatsoever. Therefore, Chief Tucker is also entitled to judgment

8  in his favor as to Plaintiffs' third cause of action.

9      Although the SAC indicates that §1981 cause of action is also alleged against the city, it

10 contains no §1981 *Monell* allegations like it does for the §1983 *Monell* claim against the city.

11 Therefore, notwithstanding the utter lack of evidence, the SAC fails to sufficiently allege a §1981

12 cause of action against the City and the City is entitled to judgment in its favor as a matter of law.

13 **B.**    **Plaintiffs cannot maintain a §1983 claim against Ortiz or Chief Tucker.**

14     The first cause of action alleges that Plaintiffs were deprived of their rights to be free from

15 excessive force by police officers guaranteed by the Fourth, Fifth and Fourteenth Amendments to

16 the United States Constitution, the right to freedom of expressions protected by the First

17 Amendment, the right to privacy and the right to be free from unreasonable searches and seizures

18 under the Fourth Amendment.

19     As an initial matter, the SAC alleges excessive force under the Fourth, Fifth and Fourteenth

20 Amendments. Plaintiffs cannot, however, bring excessive force claims under the Fifth and

21 Fourteenth Amendments. "The Due Process Clause of the Fifth Amendment and the equal

22 protection component thereof apply only to actions of the federal government – not to those of state

23 or local governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001)(citing

24 *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981). Because Plaintiffs' case does not involve the

25 federal government and does not allege that any defendant is a federal actor, the court must grant

26 Defendants' motion with respect to Plaintiffs' Fifth Amendment excessive force claims.

Plaintiffs' Fourteenth Amendment claims must also fail. When an explicit textual provision of the federal constitution protects against a challenged government action, the claim must be analyzed under that specific provision alone and not under the more general guarantee of substantive due process. *Armendariz v. Penman*, 75 F.3d 1311, 1322 (9th Cir. 1996); *Macri v. King County*, 110 F.3d 1496, 1499 (9th Cir. 1997). In addressing an excessive force claim brought under §1983, analysis begins by isolating the precise constitutional violation with which the defendant is charged. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Id*. Where an excessive force claim arises in the context of an arrest or investigatory stop, it most often invokes the protection of the Fourth Amendment. *Id*. Because that is the context here, the court should grant Defendants' motion with respect to Plaintiffs' Fourteenth Amendment excessive force claim and evaluate the merits of Plaintiffs' claims pursuant to the Fourth Amendment.

### 1.    UNREASONABLE SEIZURE CLAIM

The Fourth Amendment to the United States Constitution protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. In order for an arrest to satisfy the requirements of the Fourth Amendment, the "reasonableness" of the arrest is determined by the existence of probable cause. *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). Probable cause exists when facts and circumstances known to the arresting officer are sufficient to warrant a prudent person to believe that the person arrested has committed an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Barry*, 902 F.2d at 773.

When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest and to search the suspect in order to safeguard the evidence and ensure their safety." *Virginia v. Moore*, 128 S.Ct. 1598, 1607 (2008).

1  A warrantless arrest by a peace officer for a misdemeanor is lawful only if the officer has

2  reasonable cause to believe the misdemeanor was committed in the officer's presence. Penal Code

3  §836(a). Moreover, here, plaintiffs were not even arrested. Rather, they were detained and released

4  at the scene.

5      In addition, California law protects a law enforcement officer from liability for false arrest

6  or false imprisonment where the officer, acting within the scope of his or her authority, either (1)

7  effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful. *Cervantes v. United*

8  *States*, 330 F.3d 1186, 1188 (9th Cir. 2003); see also, *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir.

9  2004).

10      It is undisputed that Officer Ortiz followed his partner Alcantar into the front yard

11  of 1387 62nd Avenue where Benjamin Ortega was being detained by Alcantar. As Benjamin was

12  being detained by Alacantar, Miguel saw Alcantar grab Benjamin, and Miguel screamed at

13  Alcantar, telling him to let Benjamin go or he "was going to get into it." Miguel then came down

14  the steps off the porch.   Ortiz's attention went immediately to Miguel who was going

15  towards Alcantar.  Ortiz stepped in between Miguel and Alcantar, grabbing Miguel by the arm or

16  back, spinning him around, and handcuffing him before taking him out of the yard, and detaining

17  him in a police vehicle.

18      Penal Code Section 148 provides, in pertinent part, as follows:

19      "Every person who willfully resists, delays or obstructs any public officer, peace
20      officer ..., in the discharge or attempt to discharge any duty of his or her office or
        employment, when no other punishment is prescribed, shall be punished by a fine not
21      exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to
        exceed one year, or by both that fine and imprisonment." PC Section 148.
22

23      Miguel admits that he did these things to protect his little brother. Benjamin and other

24  witnesses also testified that Miguel attempted to interfere with Benjamin's arrest. Therefore, it is

25  beyond dispute that Miguel was in the process of obstructing Officer Alcantar in the discharge of

26  his duty. Officer Ortiz simply stopped Miguel before he could complete his interference by

1  grabbing him as he charged toward Benjamin being arrested by Alcantar. A prudent person in

2  Officer Ortiz's position would have believed that Miguel was a threat to Alcantar and that it was

3  necessary to restrain him from interfering with Benjamin's arrest. Therefore, Miguel's detention

4  was reasonable under the Fourth Amendment and Ortiz is entitled to judgment in his favor.

5  **2.    EXCESSIVE FORCE CLAIM**

6

7      Under the Fourth Amendment, officers may use only such force as is objectively reasonable

8  under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397. "Determining whether the force

9  used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful

10 balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'

11 against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*,

12 471 U.S. 1, 8 (1985)). In evaluation the nature and quality of the intrusion, courts must consider the

13 "type and amount of force inflicted," *Jackson v. City of Bremerton*, 268 F.3d 646, 651-52 (9th Cir.

14 2001), and allow "for the fact that police officers are often forced to make split-second judgments --

15 in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is

16 necessary in a particular situation." *Graham*, 490 U.S. at 397.

17      Excessiveness under the Fourth Amendment of force used by police officers depends on

18 whether it was objectively reasonable in light of the facts and circumstances confronting the

19 officers, without regard to their underlying intent or motivation. *Gregory v. County of Maui*, 523

20 F.3d 1103, citing U.S.C.A. Const.Amend. 4.

21      Here, it is undisputed that Miguel attempted to interfere with Officer Alcantar's arrest of his

22 little brother Miguel. He screamed at Alcantar telling him to let Benjamin go or he "was going to

23 get into it" and then came down the steps of the porch in Alcantar's direction. By his own

24 admission, the officers knew he was going to "go out against Alcantar" and was stopped from

25 getting to Alcantar by officers. Officer Ortiz described Miguel's actions as not being a walk, but a

26

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT                    C07-02659 (JCS)

1  "fast action, very aggressive with intention, like tunnel vision type of intention" going towards

2  Alcantar. Ortiz Depo. at 51:3-10, 66:1-11.

3      Given the actual and imminent threat Miguel posed to Alcantar as he was arresting

4  Benjamin, grabbing him, turning him around and hand cuffing him was a more than reasonable

5  amount of force.  Even if Miguel did get thrown to the ground while he was being grabbed and

6  handcuffed, Ortiz acted reasonably when he stepped in and stopped Miguel from "getting into it"

7  with Officer Alcantar to interfere with his arrest of Benjamin. Ortiz did no more than a reasonable

8  officer under the circumstances would have done to stop him.

9      In addition, an unsupported claim of injury such as where there are no medical records to

10  support the plaintiff's claim that he suffered injury as a result of being handcuffed by Officer Ortiz

11  is insufficient to establish excessive force. See *Arpin v. Santa Clara Valley Transportation Agency,*

12  261 F.3d 912, 922, (citing case that says allegations of injury without medical records or other

13  evidence of injury is insufficient to establish excessive force.)

14      Plaintiff Miguel Ortega has produced no evidence of injuries that he purportedly sustained

15  when he was detained and handcuffed by Officer Ortiz. He simply alleges in his deposition that he

16  was thrown to the ground. He claims that he does not remember seeking psychological counseling

17  resulting from the incident even though he "sometimes" experiences anxiety or stress when he sees

18  police officers. In fact, he did not tell anyone about these alleged injuries after the incident. He did

19  not seek any kind of medical treatment for the alleged injuries to his back and ribs.  Further, it is

20  undisputed that plaintiff did not resist arrest, was handcuffed by Ortiz, and put in the back seat of

21  the patrol car.

22      In addition, there are no allegations that Ortiz participated in any way with the detention or

23  arrest of Benjamin Ortega. Indeed, Benjamin's allegations regarding his detention involve only

24  Alcantar. And with respect to the vague allegation that Miguel believes there was a taser weapon

25  held to the back of his head or neck because his cousin later told him so, there is no evidence

26

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT                    C07-02659 (JCS)

1   connecting Ortiz to any such action. Miguel never personally saw any weapon pointed at him at all,

2   let alone by Ortiz.

3        Miguel's cousin Eduardo testified that he could not recall who handcuffed Miguel and that

4   he saw a big black police officer hold the taser to Miguel's head. Miguel isn't even sure which

5   officer even put handcuffs on him. It is undisputed, however, that Ortiz is a light complexioned

6   Latino of Mexican and Puerto Rican heritage. Furthermore, neither Ortiz nor Alacantar were

7   assigned to carry Tasers on the day of the incident. Ortiz would not have been issued a taser

8   because up to that day he had not yet been trained on the use of a Taser. Plaintiffs have no evidence

9   to dispute that. Therefore, even if Eduardo's testimony is true, there is no way that Ortiz could have

10  been the big black officer with a taser that he described, and there is no basis for the force claim

11  against Ortiz on the basis of such testimony.

12       It should also be noted that although the §1983 cause of action indicates that it is against

13  Chief Tucker as well, the record is devoid of any evidence that Chief Tucker was personally

14  involved in any of the alleged constitutional violations that form the basis of Plaintiffs' first cause

15  of action. Based on those undisputed facts, Plaintiffs cannot maintain an excessive force claim

16  against Officer Ortiz or Chief Tucker and they are entitled to judgment in their favor as a matter of

17  law.

18         **3.      RIGHT TO PRIVACY CLAIM**

19       The SAC also vaguely alleges a claim for the alleged violation of Plaintiffs' right to privacy.

20  There are insufficient allegations, however, to show that Plaintiffs' right to privacy was violated. In

21  fact it is difficult to determine which facts in the SAC form the basis for such a claim in this case.

22  Plaintiffs may intend to assert that the officer's entry onto Plaintiffs' cousins' property located at

23  1387 62nd Avenue was the source of the alleged privacy violation, but there are no allegations that

24  plaintiffs owned the property or resided at the property or that they otherwise had a reasonable

25  expectation of privacy in the home.

26

1   Moreover, the Plaintiffs' contact with the officers occurred outside in the front yard of the

2   property where they certainly had no expectation of privacy. This is particularly so because they

3   were being followed to the property by the officers after they had congregated on the corner and

4   refused to leave and after Benjamin failed to stop when asked to do so by the officers. And

5   Miguel's encounter with Ortiz occurred only after he came out of the house to interfere with

6   Benjamin's detention.

7   The officers had told Benjamin to stop before he walked to his cousins' house and entered

8   the yard. This was not a game of "tag" where Benjamin was allowed to evade officers, beat them to

9   the yard and call "safe!" Notwithstanding Plaintiffs' lack of a privacy interest in the front yard, the

10  officers had the right to enter the yard to continue the pursuit of a suspect who was evading them.

11  Therefore, if the entry into the yard is the basis for the right to privacy claim, it is without merit and

12  Defendants are entitled to judgment in their favor.

13

14  **4.    FIRST AMENDMENT CLAIM**

15  The SAC alleges the Plaintiffs' rights to freedom of expression under the First Amendment

16  were violated, but there are no allegations in the SAC that would provide a basis for the claim. At

17  best, Plaintiffs allege that Benjamin Ortega was carrying a Mexican flag when he was crossing

18  International Blvd. (SAC at 5:2-3.) This allegation is insufficient.

19  Plaintiffs must plead and ultimately prove that their speech was constitutionally protected

20  and that the speech was the substantial or motivating factor for the retaliation. *Mt. Healthy City*

21  *School District Board of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The fact that a Mexican flag

22  was in the picture in and of itself does not establish that the officers' actions were in retaliation for

23  Benjamin's freedom of expression. It is also unclear how this cause of action applies to Miguel in

24  any way since he never alleges that he was carrying the flag or otherwise engaging in protected

25  activity or that he was the target of the officer's actions until he decided to interfere with

26  Benjamin's detention.

1    Viewing the facts in a light most favorable to Plaintiffs, at best, Alcantar is accused of

2  telling Benjamin to hurry across the street or he would put the flag up his ass. (SAC at 5:6-8.) There

3  is nothing more to indicate that such a comment was made in retaliation for Benjamin carrying a

4  Mexican flag. And there are no allegations regarding any acts of Ortiz that would amount to

5  retaliation for Plaintiffs' freedom of expression. Nor are there any allegations of any acts of Chief

6  Tucker at all let alone any that would amount to retaliation for Plaintiffs' exercise of their right to

7  free expression. Therefore, Plaintiffs cannot maintain a First Amendment Claim against Ortiz,

8  Chief Tucker or the City and Defendants' are entitled to judgment in their favor.

9  **C.    Plaintiffs Cannot Prevail on Their § 1983 Monell Claim Because They Cannot Establish that Their Constitutional Rights Were Violated as a Result of a**

10  **Policy, Practice, or Custom of the City of Oakland.**

11    Even though a local governmental entity may be held liable under 42 U.S.C. § 1983, there is

12  no employer vicarious liability under the *respondeat superior* liability theory. *Monell v.*

13  *Department of Social Services of City of New York*, 436 U.S. 658 (1978).  In order to impose

14  liability on a local governmental entity, a Section 1983 plaintiff must prove "(1) that he possessed a

15  constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this

16  policy 'amount[ed] to deliberate indifference' to the plaintiff's constitutional right; and (4) that the

17  policy [was] the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d

18  1470 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989).

19                             **1. Official Policy.**

20    A plaintiff may prove that there is an "official policy" sufficient to impose municipal

21  liability under Section 1983 in several ways.

22    1) A plaintiff can identify the "edicts or acts" of an official policy maker charged with

23  authority over the specific area in which the policy is applicable. *Monell*, 436 U.S. at 649; *Ulrich v.*

24  *City and County of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002).

25    2) Alternatively, by showing that an official with final policymaking authority either

26  delegated that authority to, or ratified the decision of, a subordinate. *Ulrich*, 308 F.3d at 985 (citing

16

1  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)); *Gilette v. Delmore*, 979 F.2d 1342, 1348

2  (9th Cir. 1992).

3      3) Finally, in order to establish a custom or practice, a plaintiff in a Section 1983 case must

4  show that the unlawful practice of the municipality is "persistent and widespread … permanent and

5  well-settled," even when those customs or practices or usage deviate from the written or otherwise

6  officially articulated policies of the public entity. *Monell*, 436 U.S. at 690-91 (citing *Adickes v. S.H.*

7  *Kress & Co.*, 398 U.S. 144, 167-68 (1970)); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

8  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be

9  founded upon practices of sufficient duration, frequency and consistency that the conduct has

10  become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918 (citing *Bennett v. City*

11  *of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)); *See also*, *Davis v. Ellensburg*, 869 F.2d 1230 (9th

12  Cir. 1989) (manner of one arrest is insufficient to establish policy); *See also Meehan v. Los Angeles*

13  *County*, 856 F.2d 102 (9th Cir. 1988) (two incidents are not sufficient to establish a custom).

### 2. Deliberate Indifference.

15      This list above, however, establishes only the *conduct* that may be properly attributed to the

16  municipality.  But it is "not enough for a §1983 plaintiff merely to identify conduct properly

17  attributable to the municipality." *Board of Commissioners of Bryan County, Oklahoma v. Brown*,

18  520 U.S. 397, 404 (1997).  Rather, the plaintiff must establish deliberate indifference that is

19  "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."

20  *Id.* (emphasis in original). "[A] plaintiff must show that the municipal action was taken with the

21  requisite degree of culpability *and must demonstrate a direct causal link between the municipal*

22  *action and the deprivation of federal rights.*" *Id.* (emphasis supplied).

23      Deliberate indifference is a "stringent standard" of fault, requiring proof that the

24  municipality ignored "the known or obvious consequences" of its actions.  Deliberate indifference

25  "is thus treated … as tantamount to intent, so that inaction by a policymaker deliberately indifferent

26  to a substantial risk of harm is equivalent to the intentional action that setting policy presupposes."

1   *Brown*, 520 U.S. at 419; *See also Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (explaining

2   the word "'policy' generally implies a course of action consciously chosen from among various

3   alternatives") (Rehnquist, J., plurality opinion)).  The Court went on to explain the limits of

4   municipal liability in the context of a single incident of alleged unconstitutional conduct: "it is

5   therefore difficult in one sense even to accept the submission that someone pursues a 'policy' of

6   'inadequate training' unless evidence be adduced which proves the inadequacies resulted from

7   conscious choice--that is proof that the policy makers deliberately chose a training program which

8   would prove inadequate." *Tuttle*, 471 U.S. at 823.

9                                    **3. Policy was Moving Force.**

10          For a policy to be the moving force behind the deprivation of a constitutional right, the

11   identified deficiency in the policy must be "closely related to the ultimate injury." *Gibson v.*

12   *County of Washoe, Nev.*, 290 F.3d 1175, 1196 (9th Cir. 2002) (citing *Canton*, 489 U.S. at 391); *See*

13   *also Oviatt*, 954 F.2d at 1478.  The plaintiff's burden is thus to establish "that the injury would have

14   been avoided" had proper policies been implemented." *Oviatt*, 954 F.2d at 1478.

15          Applying these standards to Plaintiffs' claims, the record fails to meet any of the necessary

16   elements to subject the city to liability for any of the alleged constitutional violations.

17          As shown above, Plaintiffs have no evidence to prove any of their claims against Officer

18   Ortiz or Chief Tucker. Even assuming that Plaintiffs can show a constitutional violation in some

19   form or another, there is insufficient evidence in the record to support liability against the City or

20   Chief Tucker (sued in his official capacity). Specifically, Plaintiffs cannot show that an official

21   policy of the City of Oakland was a moving force behind a violation of their constitutional rights.

22          As a threshold matter, the official written policies with respect to the relevant issues in this

23   case -- arrests and detentions and use of force are constitutionally sufficient.  Even the most cursory

24   review of the policies in place at the time of this incident show that they conform completely to

25   constitutional standards. And there is no evidence in the record of a widespread practice or custom

26   of the kind of constitutional violations alleged by Plaintiffs to which the City or Chief Tucker as an

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT                              C07-02659 (JCS)

1    official policymaker has displayed deliberate indifference.

2          Officers Ortiz's history with the Department provides no basis for liability against the City.

3    There is no logical connection between Officer Ortiz's disciplinary history and the purported

4    constitutional violations at issue here.   Officer Ortiz has three complaints sustained against him,

5    two of which are for not putting the ending mileage on the radio and one for handcuffing a suspect

6    when he should not have. There can be no liability because there is no logical connection between

7    Ortiz's disciplinary history and the purported constitutional violations at issue here. *McDade v.*

8    *West*, 223 F.3d 1135 (9th Cir. 2000).

9          Plaintiffs' §1983 *Monell* claim is insufficient because nothing in the record to suggest that

10    City should have known that these officers with their histories would be likely to falsely arrest

11    someone or violate rights based on race. Plaintiffs have no evidence to the contrary and discovery is

12    closed.  As such, Plaintiffs' allegations are empty and unsupported through discovery. And the City

13    cannot be liable based on the single incident that is at the core of this case.

14    **D.**    **Plaintiffs cannot maintain their assault and battery claims against Ortiz.**

15          As a preliminary matter, there is no evidence in the record that Officer Ortiz ever physically

16    threatened and physically seized Benjamin Ortega. Therefore, there is no basis for Benjamin's

17    claims for assault and battery against Ortiz. And as set forth more fully above, Ortiz had probable

18    cause to arrest Miguel for interfering with Alcantar in the line of duty pursuant to Penal Code §148.

19          Miguel's assault and battery claims against Ortiz must fail for the same reason his excessive

20    force claim failed. Under California law, Miguel's claim for assault and battery against Ortiz cannot

21    be established unless he proves that Officer Ortiz used unreasonable force against him to make a

22    lawful arrest or detention. See *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th

23    Cir. 2001). Miguel also cannot sustain his claim of battery unless he proves the unreasonable force

24    caused his injury, damages, loss or harm. *Id.* (citation omitted).

25          As previously set forth, Miguel cannot show that Ortiz used unreasonable force or that such

26    unreasonable force caused injury, damage, loss or harm. Therefore, the court should grant judgment

1  in Ortiz's favor on the assault and battery claims.

2  **E.    Plaintiffs cannot maintain their California Civil Code §52.1 claim against Ortiz.**

3          For all of the same reasons that Plaintiffs cannot maintain their assault and battery and

4  excessive force claims against Ortiz, they cannot maintain their Civil Code §52.1 claim against him,

5  as that claim is also based on alleged use of wrongful force. Therefore, Ortiz is entitled to judgment

6  in his favor as to that claim.

7  **F.    Plaintiffs cannot maintain their California Civil Code §51.7 claim against Ortiz.**

8          For the same reasons that Plaintiffs cannot maintain their §1981 claims against him, they

9  cannot main their Civil Code §51.7 claim against him, as that claim is also based on racial animus

10 which Plaintiffs have failed to adequately plead and cannot prove against Ortiz. Further, as

11 previously shown above, the force Ortiz used against Miguel was reasonable under the

12 circumstances. Therefore, Ortiz is entitled to judgment in his favor as to the §51.7 claims.

13 **G.    Plaintiffs cannot prove that Ortiz caused an intentional infliction of emotional
        distress.**

14         The elements for intentional infliction of emotional distress are "'(1) extreme and

15 outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

16 probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

17 distress; and (3) actual and proximate causation of the emotional distress by the defendant's

18 outrageous conduct.'" *Davidson v. City of Westminster*, 32 Cal.3d 197, 185 Cal.Rptr. 252, 649 P.2d

19 894, 901 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 156 Cal.Rptr. 198, 595 P.2d

20 975, 983 (1979)).  To be considered outrageous, the conduct "must be so extreme as to exceed all

21 bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks omitted).

22         Here, the SAC fails to set forth any factual basis for Plaintiffs' intentional infliction of

23 emotional distress claims (SAC at pars. 43-45), and there is no evidence in the record that Ortiz

24 engaged in conduct that was extreme and outrageous when he lawfully detained Miguel for

25 interfering with a police officer in the line of duty.

26

**H.    Plaintiffs have not established a legal duty owed to them by Ortiz and Chief Tucker that was breached for the purposes of their Negligence claims against them.**

Whether Defendants owed a duty of due care to Plaintiff is a question of law for the court to determine. *Benavidez v. San Jose Police Department* (1999) 71 Cal.App.4th 853, 859 (citing *Dutton v. City of Pacifica* (1995) 35 Cal.App.4th 1171, 1175). Police officers owe duties of care only to the public at large and they have no duty to offer affirmative assistance to anyone in particular, except where the officer enters into a "special relationship." *Id.* at 860 (citing *Williams v. State of California* (1983) 34 Cal.3d 18, 23-24).

To establish the negligence of a peace officer under California law, a plaintiff must demonstrate that: (1) the officer owed the plaintiff a duty of care; (2) the officer breached the duty by failing "'to use such skill, prudence, and diligence as other members of [the] profession commonly possess and exercise;'" (3) there was a "'proximate causal connection between the [officer's] negligent conduct and the resulting injury'" to the plaintiff; and (4) the officer's negligence resulted in "'actual loss or damage'" to the plaintiff. *Harris v. Smith* (1984) 157 Cal.App.3d 100, 104 (citing *Budd v. Nixen*, 491 P.2d 433, 436 (Cal. 1971)). Due care as an element of negligence presents a question of fact for the jury. *Brummett v. County of Sacramento* (1978) 21 Cal.3d 880, 887. "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law," but the public employee is not shielded from liability for false arrest or false imprisonment. Cal. Govt. Code § 820.4.

Here, the negligence cause of action is based on a duty not to inflict unnecessary physical and mental harm. (SAC at 10:21-23.) Even if such a duty exists, as established above, Ortiz's actions were reasonable under the circumstances relative to his detention of Miguel and there are no allegations and there is no evidence in the record that he inflicted physical or mental harm against Benjamin. Moreover, as further shown above, Miguel has failed to present any evidence of the injuries he claims to have sustained as a result of his detention. Therefore, Ortiz is entitled to judgment in his favor on Plaintiffs' negligence claims against him.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT                    C07-02659 (JCS)

1    There is even less of a basis for the negligence claim against Chief Tucker. The SAC is

2    voice of any allegations of a mandatory duty owed or breach by Chief Tucker that caused injuries to

3    Plaintiffs. Furthermore, he is being sued in his official capacity only. Therefore, suing the Chief is

4    like suing the City itself and no statutory basis for liability has been alleged against him. See Govt.

5    Code §815(a).

6                                **IV.  CONCLUSION**

7        For the reasons set forth above, Defendants' Partial Summary Judgment should be granted.

8    Dated:  August 15, 2008

9                                JOHN A. RUSSO, City Attorney
                                 RANDOLPH W. HALL, Assistant City Attorney
10                               JAMES F. HODGKINS, Supervising Trial Attorney
                                 CHARLES E. VOSE, Senior Deputy City Attorney
11                               KANDIS A. WESTMORE, Deputy City Attorney

12

13    By:    ___/S/ KANDIS A. WESTMORE_____
                                 Attorneys for Defendants,
14                               CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT,
                                 WAYNE TUCKER, and BERNARD ORTIZ

15

16

17

18

19

20

21

22

23

24

25

26