# EXHIBIT B

# TRAINING  BULLETIN

Date of Issue / Revision:
23 Jul 98

Index Number: I—M
Alpha Index: Contacts, Detentions, and Arrests

*"Department Training Bulletins shall be used to advise members of current police techniques and procedures and shall constitute official policy."*
*Department General Order A—7; 21 July 1989*

 ## Contacts, Detentions, and Arrests*

This Training Bulletin provides officers with current information on contacts, detentions, and arrests.

Additional information about contacts, detentions, and arrests can be found in Department Training Bulletins on related subjects; the Alameda County District Attorney's Office quarterly publication, *Point of View*; and the Peace Officers' Legal Sourcebook. Officers can also contact the Department's law instructors through the Training Section.

As the following pages demonstrate, the courts often use a simple criteria to help determine the legality of an officer's actions in making contacts, detentions, and arrests. The courts ask if the officer's actions were reasonable based on the information the officer had at the time and the situation with which the officer was confronted.

The rules of law, however, change frequently. Officers are encouraged to avail themselves of all relevant publications and instructional courses to stay abreast of the changes.

---

\* In this Training Bulletin, much of the information on Detentions is taken from *Detentions*, in the Winter, 1996 issue of Point of View. Much of the information on Arrests is taken from *The Law of Arrest*, in the Fall 1997 issue of Point of View. Additional information was provided by the California Legal Sourcebook.

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M** 

 Contacts

# Contact Defined

A contact is a face–to–face communication between an officer and a private person under circumstances in which the person is free to leave.

The California Supreme Court refers to a contact as a "consensual encounter."

The standard for initiating a contact is not "probable cause," "reasonable suspicion," or any other specific indication of criminal activity. An officer may undertake a contact with anyone at any time as long as the officer is in a place he or she has a legal right to be.

Unless an officer has probable cause to believe an arrest should be made or that detention is justified, an officer's communication with a private person begins with a contact.

# Conduct during a Contact

A person contacted may not be halted, detained, or pat searched against his/her will. A person may not be required to answer questions or to cooperate in any way against his/her will. If a person refuses to cooperate, the person must be permitted to leave unless an officer has obtained or developed sufficient additional information to justify a detention or arrest.

Asking someone for identification or personal information does not necessarily elevate a contact to a detention as long as the person reasonably believes that he or she is free to leave. Refusal by someone to provide identification or personal information during a contact does not, by itself, elevate the contact to a detention.

Retention of a person's identification through the length of a contact may elevate a contact to a detention.

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M** 

# Possible Consequences Associated With Inadvertently Elevating a Contact Into an Unlawful Detention

If a peace officer unreasonably restricts the movement of a private person, such as by blocking a person's exit, or conveys the message that the subject is not free to leave when no specific reason exists to justify a detention or an arrest, the officer may be subject to the following consequences:

- Criminal prosecution under Penal Code Section 236, false imprisonment

- Suppression of evidence discovered (exclusionary rule)

- Civil and / or criminal prosecution for violation of civil rights



**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**

 Detentions

## Detention Defined

An officer detains a suspect in order to determine if the detainee is involved in criminal activity.

For example, an officer might detain a pedestrian acting suspiciously, a driver of a car leaving an area where a robbery or burglary has just occurred, a person involved in a secretive hand–to–hand exchange in a high drug area, a man staggering on a sidewalk, or a speeding motorist. No police action is as commonplace or productive.

## Rules Governing Detentions

Detaining a suspect triggers certain procedural rules which, if violated, may result in the suppression of all evidence obtained as a result of the detention.

These rules are concerned with two separate aspects of detentions:

1. Grounds to Detain

   Was the detention justified? In other words, did the officers have reasonable suspicion to believe the detainee had committed, was committing, or was about to commit a crime?

2. Detention Procedure

   After the detainee was stopped, did the officers conduct their investigation in a reasonable manner?

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



## 1. Grounds to Detain

### A. Grounds to Detain: "Reasonable Suspicion"

Reasonable Suspicion is a term used to describe the minimum level of suspicion required to lawfully detain a suspect or make a car stop.

Reasonable suspicion exists when the detaining officer or the officer authorizing the detention is aware of specific facts which reasonably indicate that a crime is occurring, has occurred, or is about to occur, and the person to be detained is involved in that activity.

Reasonable suspicion is similar to probable cause in that both terms describe a particular level of suspicion. They differ, however, in that reasonable suspicion may be based on information that is not as incriminating or as reliable as the information needed to establish probable cause. As the U.S. Supreme Court explained,

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

Consequently, an officer may detain a suspect even though the circumstances do not *directly* implicate the suspect in a crime. In fact, it is sufficient that the circumstances were merely *consistent* with criminal activity. In the words of the California Supreme Court, "If the circumstances are consistent with criminal activity, they permit—even demand—an investigation; the public rightfully expects a police officer to inquire into such circumstances in the proper discharge of the officer's duties."

In determining whether reasonable suspicion existed, the courts take note of all relevant circumstances known to the officer at the time the suspect is detained. Those circumstances are then evaluated to see if they were sufficiently suspicious to justify a detention. Such an evaluation is made by applying common sense, taking into account the reasonable inferences drawn by the officer as the result of the officer's training and experience.

In some cases, the decision to detain is based on a single circumstance, such as the suspect matched the description of a wanted person or a person who had just committed a crime in the area. Often, however, the decision to detain is based on a variety of circumstances which, when considered as a whole, are sufficiently suspicious to justify a detention.

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



The following list contains some of the factors which the courts have recognized as solid contributors in establishing reasonable suspicion.

| | |
|---|---|
| Appearance | The suspect closely resembled a wanted person, occupied a wanted vehicle, or appeared intoxicated or injured. |
| | Note:    Detentions may not be based upon race alone. |
| Action | The suspect appeared to be casing an area or hiding or loitering. The suspect was in the vicinity of a crime or leaving or running from a crime scene. The suspect attempted to discreetly hide or throw something away as officers approached. |
| | Note:    Without other factors, the mere running from an officer is not sufficient justification for a detention. |
| Traffic Violations | The suspect drove erratically or appeared to be under the influence of alcohol. The suspect committed a traffic violation. The suspect's vehicle had an equipment violation. |
| Prior Knowledge | The officer is aware of the suspect having an arrest or conviction record. The officer is aware of the suspect being on probation or parole. The suspect is known to have committed a serious offense. The suspect has a history of committing the type of crime under investigation. |
| Time of Day | It is the time of day when the type of crime being investigated is likely to occur. It is unusual for people to be in the area at this time of day. |

Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M



Area of Stop   The suspect is near the location of a known offense soon after its commission. The suspect is in an area known for an unusually high incidence of a particular criminal activity, and the officer can connect the suspect to some type of criminal activity in the specific area.

Note:   Officers are cautioned that the courts find little credence in the term "high crime area," and the term should be avoided. If reference is made to the area of a stop, officers should articulate specific facts about the area. For example, "The suspect was stopped within three blocks of an area where four commercial burglaries had occurred during the past week." Although more recent cases agree that this statement is a legitimate factor, it isn't enough, by itself, for a detention.

Police Training   The suspect's conduct resembles the pattern or modus operandi followed in a particular series of crimes. The officer has experience dealing with the particular kind of criminal activity being investigated.

Suspect
Demeanor   The suspect was unresponsive or gave evasive, false, suspicious, or incriminating answers. The suspect was excessively nervous, belligerent, or, even, too casual.

Note:   Conduct during a detention cannot be used to retroactively justify the detention, but it may justify prolonging it.



## B. Grounds to Detain: Information from Witnesses and Informants

The decision to detain a person is often based on information furnished by witnesses and inform-ants. For example, a witness to a robbery provides a description of the robber, or an informant reports that a particular person is carrying a gun or drugs.

Whether such information is sufficient to detain depends on whether there is reason to believe it is reliable. As the United States Supreme Court observed, "Some tips, completely lacking in indi-cia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized."

Consequently, officers who detain a suspect based on information from a witness or informant must be able to prove they reasonably believed the information was reliable. The manner in which an officer proves he/she reasonably believed the information was reliable depends upon the type of informant who provided the information.

### Citizen Informants

Information from a "citizen informant" is presumed reliable and may, therefore, justify a deten-tion if it was based on the informant's personal knowledge. In most cases, a person will be deemed a citizen informant if he or she was a crime victim or witness who identified himself to officers or whose identity was known to officers.

### Tested Police Informants

Information from a tested informant will usually be deemed reliable. An informant will be con-sidered "tested" if his information was corroborated or if he had a good "track record" for pro-viding accurate information.

### Anonymous Callers

Information from a caller who does not identify himself is presumed to be unreliable. Consequently, officers may not detain a suspect based on such information unless they had addi-tional information that makes it reasonable to rely on the caller's tip.

Thus, for example, a detention would not be justified if it was based solely on an anonymous call to the police, reporting that a certain person was presently in possession of drugs. Under such cir-cumstances, it would be necessary to corroborate the tip although, as noted earlier, such corrobo-ration need not be as convincing as the corroboration required to establish probable cause.

Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M 

C. Grounds to Detain: Pretext Detentions

A detention based on reasonable suspicion that the detainee committed a certain crime will not be invalidated on grounds the detaining officer expected or hoped the detention would lead to information about some other crime. This is because the lawfulness of a detention depends solely on whether the officer was aware of specific facts which constituted reasonable suspicion to detain. As the United States Supreme Court explained, "Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's action in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken."



## 2. Detention Procedure

When reasonable suspicion exists, officers may take action which is reasonably necessary to pro-
tect themselves and determine whether the detainee should be arrested, cited, or released.
Although the law gives officers a great deal of discretion in deciding how to conduct detentions,
there are limits.

Specifically, detentions must not be unduly prolonged or unreasonably intrusive. This means,
among other things, officers must be diligent and must limit their investigation to the crime or
crimes for which reasonable suspicion exists.

If these rules are violated, the detention will be automatically converted into a *de facto* arrest
which will be declared an unlawful arrest unless probable cause existed at that point.

During a detention, officers may take two kinds of actions:

1. Actions reasonably necessary for officer safety
2. Actions reasonably necessary to confirm or dispel the officer's suspicions

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



## A. Detention Procedure: Officer Safety

During a detention, officers may take certain precautions for their safety and the safety of others. Although some of these precautions might be indicative of an arrest, they will not transform a detention into a *de facto* arrest unless a court concludes they were not reasonably necessary.

**Detention Procedure: Officer Safety—Restraining a Detainee**

The act of restraining a detainee will not convert a detention into a *de facto* arrest if such restraint was warranted under the circumstances. For example, handcuffing a detainee has been deemed reasonable when officers were waiting for the victim of a purse snatch to arrive for a show-up, while officers were transporting a rape suspect to a hospital for a show-up, while officers were detaining six suspects in a robbery-murder, and after a detainee struggled with officers.

Similarly, placing a detainee in the back seat of a patrol car has been declared reasonable while officers were waiting for a robbery victim to arrive for a show-up or while officers were waiting for the arrival of an additional officer who was experienced in recognizing the symptoms of drug use.

**Detention Procedure: Officer Safety—Drawn Guns**

An officer's act of drawing a gun on a detainee will not convert a detention into a *de facto* arrest if such a precaution was reasonably necessary under the circumstances and the gun was reholstered after it was safe to do so.

In People v. Campbell, for example, an officer drew a gun in order to detain a suspected drug dealer but reholstered it after a pat search revealed the drug dealer was unarmed. The court ruled the encounter was merely a detention because, "The officer's concern for his safety also justified his approaching [the suspect] with a drawn weapon...When [the suspect] did not react violently to being accosted, [the officer] immediately replaced his gun in his belt before patting down [the suspect]. This conduct did not constitute restraint beyond that which is necessary for temporary detention."



**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**

**Detention Procedure:  Officer Safety—Force**

The use of force against a detainee will not transform a detention into a *de facto* arrest if such force was reasonably necessary under the circumstances. As the Court of Appeals explained,

> The right to verify or dispel suspicion is meaningless unless officers may, when necessary, forcibly detain a suspect. Thus, a police officer attempting to make an investigatory detention may properly display some force when it becomes apparent that an individual will not otherwise comply with his request to stop, and the use of such force does not transform a proper stop into an arrest.

For example, force may usually be used if reasonably necessary to prevent a detainee from fleeing or destroying evidence.

**Detention Procedure:  Officer Safety—Order Occupants of a Car to Exit**

If officers have detained the driver or passenger in a car, they may order the occupants out as follows:

Ordering the Detainee Out

Officers may, as a matter of routine, order the detainee to exit the vehicle while they are conducting their investigation. This action is allowed mainly because of the potential for danger that results when an officer is unable to observe the movements of a detainee.

Ordering Other Occupants Out

The US Supreme Court ruled that officers who have made a traffic stop may order some or all of the passengers to exit the car even though there was no objective circumstances indicating the passengers posed a threat. The court referred to this authority as an "officer safety detention." The court found that all car stops are inherently dangerous encounters due to the ease of concealing weapons within a vehicle.

The intrusiveness of such a detention would be brief and would be outweighed by the need to protect officers from a violent attack.

However, the detention of the passenger is ended once he has exited the vehicle. An officer may not pat search for weapons or force passengers to comply with detention type orders without developing reasonable suspicion to detain.

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



**Detention Procedure:  Officer Safety—Felony Car Stops**

Although the procedure for conducting a felony car stop may vary, it often involves ordering all the occupants out at gunpoint, ordering them to lie on the ground, conducting a search of their persons for weapons, handcuffing them, and placing them in the caged section of a patrol car.

In most cases, felony car stops occur when there is probable cause to arrest some or all of the occupants. Consequently, there is usually no reason to be concerned that the precautions taken might transform the encounter into a *de facto* arrest because an arrest is justified.

If reasonably necessary under the circumstances, officers may also make a felony car stop when there is only reasonable suspicion to detain one or more of the occupants of the car.

For example, in People v. Soun, Oakland officers employed full felony car stop procedures when they stopped a car containing six men who were suspects in the murder of a video store clerk who was killed during an armed robbery. Although the officers had only reasonable suspicion to detain the men, the court ruled the felony–stop precautions were proper under the circumstances and, thus, did not transform the detention into a *de facto* arrest. Said the court, "[The officers] were authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop."

**Detention Procedure:  Officer Safety—Order to Keep Hands in Sight**

An officer who has lawfully detained a suspect may order the suspect to remove his hands from his pockets or otherwise keep his hands in sight. Such an action is permissible whether or not there is reason to believe the suspect is armed.

However, a detention, in itself, does not justify a pat search.

**Detention Procedure:  Officer Safety—Pat Searches**

A pat search of a detainee is permitted if there is reason to believe the detainee is armed or dangerous.

The circumstances allowing the pat search of a detainee as well as the scope of a such a search are discussed in the Training Bulletin, *The Legal Aspects of Searching Persons*, Index Number X—X.

Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M    

## B. Detention Procedure: Conducting the Investigation

When reasonable suspicion exists, officers may question the detainee and take other steps which are reasonably necessary to confirm or dispel their suspicion. If, however, a court concludes the officers' actions were unreasonably intrusive, the detention will be declared a *de facto* arrest. As the U.S. Supreme Court explained,

> The scope of the intrusion permitted [during a detention] will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.

### Detention Procedure: Conducting the Investigation—Length of the Detention

A detention may be converted into a *de facto* arrest if it was unreasonably lengthy. There is, however, no rigid time limit after which a detention automatically becomes a *de facto* arrest. Instead, what counts is whether officers conducted the detention in a diligent manner.

Although officers must not delay in conducting their investigation, a detention will not be deemed unreasonably lengthy merely because it might have been conducted more expeditiously. Again quoting the U.S. Supreme Court,

> A court making [the assessment of whether a detention was too long] should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished... The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

The detention must, of course, be terminated when officers determine their suspicions were unfounded or, in the case of a traffic stop, when the driver signs the citation. The detention may, however, be extended if circumstances arise which increase the level of suspicion or provide grounds to detain the suspect to investigate another crime. As the Court of Appeal observed,

> No hard and fast rule can be formulated for determining the reasonableness of the period of time elapsing during a detention. The dynamics of the detention–for– questioning situation may justify further detention, further investigation, search, or arrest. The significance of the events, discoveries, and perceptions that follow an officer's first sighting of a candidate for detention will vary from case to case.

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M** 

**Detention Procedure:  Conducting the Investigation—Questioning**

In many cases, the most effective method of confirming or dispelling an officer's suspicion is simply to question a detainee. As the Court of Appeal observed,

> When circumstances demand immediate investigation by the police, the most use-
> ful, most available tool for such investigation is general on–the–scene questioning,
> designed to bring out the person's explanation or lack of explanation of the circum-
> stances which aroused the suspicion of the police, and enable the police to quickly
> determine whether they should allow the suspect to go about his business or [arrest]
> him...

<u>Miranda</u>

One of the legal issues which may arise with regard to the questioning of detainees is whether officers should have obtained a Miranda waiver before questioning. In most cases, the answer is no. A detainee does not have rights under Miranda unless he is questioned under circumstances which would cause a reasonable person to believe his freedom had been restrained to the degree associated with a formal arrest. And during most detentions, these circumstances do not exist. As the U.S. Supreme Court explained,

> [An officer who has detained a suspect] may ask the detainee a moderate number of
> questions to determine his identity and to try to obtain information confirming or dis-
> pelling the officer's suspicions. But the detainee is not obliged to respond. And,
> unless the detainee's answers provide the officer with probable cause to arrest him,
> he must then be released.

A detention may, however, evolve into a situation requiring a Miranda waiver if it becomes lengthy or if there are circumstances that would reasonably indicate the detainee was under arrest. These circumstances might include the number of officers confronting the suspect, whether the questions are accusatory or merely investigatory, and whether the detainee has been physically restrained. For example, in People v. Taylor, the court ruled the defendant was in cus-tody following a car stop mainly because he was "surrounded by at least four officers, several vehicles and a helicopter, and held at gunpoint."

<u>Questions about Unrelated Crimes</u>

Officers who have lawfully detained a suspect to investigate a certain crime may not interrogate the suspect about unrelated criminal activity unless officers are aware of facts which constitute reasonable suspicion to believe the suspect is involved in that activity. As the Court of Appeal explained in the context of traffic stops,

> [Officers are precluded] from imposing a general crime investigation upon the
> detained traffic offender that is not reasonably necessary to completion of the offi-
> cer's traffic citation duties unless the officer has an independent reasonable suspicion
> that the driver has committed unrelated offenses.

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



### Detention Procedure:  Conducting the Investigation—Warrant Checks

Officers may prolong a detention for the purpose of running a warrant check, as follows:

<u>Felony and Misdemeanor Detentions (Not Traffic)</u>

If officers have reasonable suspicion to believe that a detainee committed a felony or misdemeanor, they may prolong the detention for a reasonable period to time for the purpose of running a warrant check.

<u>Traffic Violations:  Cite and Release</u>

If the traffic offense is such that the officer is required to cite and release the driver, a warrant check is permitted only if it does not prolong the detention more than a "few moments." As the Court of Appeal explained,

> The warrant check must be completed within the period of time necessary for the officer to discharge his ordinary duties incurred by virtue of the traffic stop. That period of time necessarily includes the time required to write out the citation and obtain the offender's promise to appear or to warn him against committing future similar violations and release him without issuance of a citation.

For example, a warrant check during a routine traffic stop would be permitted if it was conducted while the officer was writing a citation or while waiting for DMV information.

On the other hand, a warrant check would not be permitted after the officer had completed his duties relative to the stop, that is, after the driver signed a promise to appear.

Sometimes, however, circumstances develop during a routine traffic stop which will justify a more lengthy detention. This typically happens when officers see or hear something which makes it reasonable to believe an occupant of the car had committed a felony, misdemeanor, or a more serious infraction. In such cases, a warrant check on the detainee is permitted. In the words of the Court of Appeal, "[A] detention which furnishes sufficient cause to prolong the investigation beyond the time required to issue a traffic citation may properly continue while a warrant check is run."

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



**Detention Procedure:  Conducting the Investigation—Request for Written Identification**

Officers who have lawfully detained a suspect may ask the suspect for written identification. If the suspect denies having written identification but is carrying a wallet, officers may order the suspect to look through the wallet while officers watch to determine if it contains identification. Alternatively, officers may seize the wallet and search it themselves for written identification.

Officers who have made a traffic stop may ask a passenger in the car for written identification or question the passenger about his identity only if it is reasonably necessary to do so, that is, to identify the passenger in case he was needed as a witness against the driver for driving without a license.

**Detention Procedure:  Conducting the Investigation—Field Contact Cards**

During the course of a detention, officers will sometimes complete a field contact card or field interview card. Such cards typically contain the detainee's name, address, vehicle description, and a summary of the details surrounding the detention. This information may be stored in a file catalogue or computer data base which can be accessed by officers in the course of subsequent investigations.

As a general rule, officers may briefly prolong a detention for the purpose of completing a field contact card if the detention was based on reasonable suspicion that the detainee committed a felony, a misdemeanor, or an infraction for which the officers could have taken the detainee into custody for an appearance before a magistrate. As the Court of Appeal explained,

> Field identification cards perform a legitimate police function. If done expeditiously and in an appropriate manner after a lawful stop and in response to circumstances which indicate that a crime has taken place and there is cause to believe that the person detained is involved in same, the procedure is not constitutionally infirm.

In the case of a traffic violation for which the driver must be cited and released, it is not clear whether the detention can be prolonged for the purpose of completing a field contact card. As a practical matter, however, the detaining officer will usually obtain all the necessary personal and vehicle identification information as a consequence of the traffic stop. Thus, in such cases there is usually no need to prolong the detention.

Prosecutor's Note: If a field contact card leads to the arrest of the detainee for a crime committed after the detention, the legality of the detention should not affect the admissibility of evidence obtained as the result of the arrest. The evidence is not "fruit" of the detention inasmuch as the commission of the crime after the detention constitutes an intervening independent act which attenuates the link between the detention and the arrest.



**Detention Procedure:  Conducting the Investigation—Transporting the Detainee**

The act of transporting a detainee from the scene of the detention will convert the detention into a *de facto* arrest unless 1) there was good cause to transport the detainee or 2) the detainee voluntarily consented to be transported.

For example, a detention will become a *de facto* arrest if officers required a detainee to accompany them to the station for questioning, fingerprinting, or for an appearance in a lineup. As the Supreme Court explained, "The line [between a detention and an arrest] is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes."

The act of transporting a detainee from the detention site to the crime scene or some other place for a show-up will also ordinarily convert the detention into a *de facto* arrest because it is usually possible to quickly transport the victim or witness to the detainee's location. Such action will not, however, convert a detention into a *de facto* arrest if there were circumstances that made it reasonable to do so. This typically occurs when it is impractical to transport the victim to the detention site because of injuries inflicted during the crime. In the words of the California Supreme Court,

> We can conceive of factual situations in which it might be quite reasonable to transport a suspect to the crime scene for possible identification. If, for example, the victim of an assault or other serious offense was injured or otherwise physically unable to be taken promptly to view the suspect, or a witness was similarly incapacitated, and the circumstances warranted a reasonable suspicion that the suspect was indeed the offender, a "transport" detention might well be upheld.

Similarly, it may be reasonable to transport the detainee to the crime scene or to a hospital for a show-up if, because of unusual circumstances, it could be done much faster than waiting for the victim to be transported. Again quoting the California Supreme Court, "The surrounding circumstances may reasonably indicate that it would be less of an intrusion upon the suspect's rights to convey him speedily a few blocks to the crime scene, permitting the suspect's early release rather than prolonging unduly the field detention."

It may also be reasonable to transport a detainee if it was reasonably necessary for officer safety or the safety of the detainee. For example, if a crowd hostile to officers or the detainee gathered at the detention site, it would be reasonable to transport the detainee a short distance to a location where the detention could be conducted safely.

Similarly, in People v. Soun, the court ruled it was reasonable to transport six suspects in a robbery-murder to a parking lot three blocks away because the officers reasonably believed the detention would be lengthy and it was necessary to detain the suspects in separate patrol cars which were blocking the street. Said the court, "A three–block transportation to an essentially neutral site for these rational purposes did not operate to elevate [the suspects'] custodial status from detention to arrest."

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



**Detention Procedure:  Conducting the Investigation—Fingerprinting the Detainee**

The Supreme Court has indicated that officers may take the fingerprints of a person who has been lawfully detained if 1) officers reasonably believed that fingerprinting would prove or dis-prove the suspect's connection to the crime for which he had been detained, and 2) the finger-printing procedure was carried out quickly.

Note: As a matter of Department policy, the taking of fingerprints in the field is prohibited.

**Detention Procedure:  Conducting the Investigation—Consent Searches**

When a suspect is detained on reasonable suspicion that he committed a certain crime, officers may, of course, seek consent to search for evidence pertaining to that crime. For example, if there is reasonable suspicion that detainee just committed an armed robbery, officers could lawfully seek consent to search his person and car for the gun used in the robbery.

As we will now discuss, under certain circumstances, officers may also lawfully seek consent to search for evidence of an unrelated crime—a crime for which reasonable suspicion did not exist.

<u>Investigation Terminated: Detainee Free to Go</u>

Officers may seek consent to search for evidence of an unrelated crime if the detainee reasonably believed the detention was over and that he was free to leave. For example, in People v. Galindo, an officer stopped a car for speeding and wrote a citation. After the driver signed the citation and received a copy, he started walking back to his car. At that point, the officer sought and received consent from the driver and a passenger to search the car for drugs and guns. During the search, officers found cocaine and heroin.

The court ruled the consent search was lawful because, "Nothing in the record suggests that [the driver or the passenger] had any objective reason to believe that they were not free to end the discussion and proceed on their way. The record fully supports the People's claim that [the offi-cer's] postcitation inquiry of [the passenger] could properly be initiated without objective justifi-cation of criminal activity and resulted in no restraint of [the passenger's] liberty."

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



<u>Investigation Terminated: Detainee Not Free to Go</u>

When the purpose of the detention has been accomplished, the detainee must be promptly released. If, however, the detention is improperly extended, during which time the detainee gives consent to search, such consent will be deemed invalid.

For example, in People v. Lingo, consent given by a driver who was stopped for an equipment violation was declared invalid because it occurred after "the officers had completed their activity with reference to the equipment, the license, and the registration... [Nevertheless] they continued to detain defendant, his companion, and his vehicle for an entirely different purpose—namely to make inquiry about an offense which, admittedly, they had no grounds to suspect had been or was being committed."

<u>Investigation Continuing: Detainee Not Free to Go</u>

The courts have not directly ruled on whether officers who are lawfully detaining a suspect with regard to a particular crime, may seek consent to search for evidence of an unrelated crime for which reasonable suspicion does not exist.

It would seem, however, that such action should be upheld because the intrusion is so minimal. In other words, if officers are permitted to prolong a detention a "few moments" to run a warrant check which is unrelated to the purpose of the stop, they should be permitted to prolong a detention a few seconds to seek consent to search.

On the other hand, a court may rule a detention had become a *de facto* arrest if officers, prior to seeking consent, had prolonged the detention by questioning the detainee about an unrelated crime or matters unrelated to the purpose of the stop.



**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**

 Arrests

## Introduction

Whenever an officer places a suspect under arrest, the legality of the arrest may be challenged in court. So, the question arises: What makes an arrest lawful?

In most cases, the lawfulness of an arrest depends on whether probable cause existed.

But first we will examine another issue which may arise when a suspect claims he was unlawfully arrested: Was the suspect, in fact, "arrested?"

## What is an "Arrest?"

It is said that a suspect is "under arrest" from the time he is taken into custody until he has been booked. Usually, however, the word "arrest" refers to the first act in the sequence: taking physical control of a suspect for the purpose of answering charges. This is what is known as a conventional arrest, and it occurs when an officer informs a suspect he is under arrest, and the suspect submits to the officer's authority or is physically restrained by the officer.

## *De Facto* Arrests

There is, however, another type of arrest, commonly known as a *de facto* arrest. Unlike conventional arrests, *de facto* arrests are not the result of a deliberate decision on the part of the arresting officer. In fact, *de facto* arrests almost always occur by accident and, as a result, are usually not supported by probable cause. In other words, most *de facto* arrests are illegal.

As a general rule, a *de facto* arrest occurs when 1) officers have restrained a suspect's freedom to a degree consistent with a formal arrest and 2) such restraint was unreasonable under the circumstances.

In most cases, *de facto* arrests occur during street detentions at the point the detention has become unduly prolonged or unreasonably intrusive. Examples of *de facto* arrests are provided in the previous section on Detentions.

Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M



# Probable Cause

## 1. Probable Cause Defined

The level of suspicion which will justify an arrest is known as "probable cause." As a general rule, probable cause exists when an officer is aware of facts which would "lead a person of ordinary care and prudence to entertain an honest and strong suspicion" that the suspect is guilty of a crime.

Although probable cause is easy to define, there are no simple rules for determining when it exists. As the U.S. Supreme Court explained, "Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."

## 2. Principles to Determine If Probable Cause Exists

Principles which may be helpful in determining whether probable cause exists are offered below.

### A. Required Level of Suspicion

The level of suspicion which constitutes probable cause is lower than that which is necessary for a conviction in court but higher than that required for a detention. The fact that the arresting officer has some doubt as to the suspect's guilt does not deprive the officer of probable cause. An officer may not, however, arrest a suspect for "investigation" of a crime.

### B. Common–Sense Analysis

The facts will be judged by applying common sense—not hypertechnical analysis. In the words of the U.S. Supreme Court, "In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

### C. Officer's Training and Experience

The training and experience of the arresting officer will be considered in determining the meaning and significance of the facts. As the Court of Appeal observed, "The experience and knowledge of a police officer in his field of expertise has long been acknowledged as an important factor in the determination of whether probable cause existed for an arrest."

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M** 

### D. Inadmissible Evidence

Information which is not admissible in court may be considered in determining the existence of probable cause if the information was inadmissible because it violated a rule of evidence, such as the hearsay rule. On the other hand, information which is inadmissible because it was obtained in violation of the defendant's Constitutional rights will not be considered.

### E. Good Faith

Probable cause does not exist merely because the arresting officer held a good faith belief that the suspect was guilty of the crime. What counts is whether the belief was reasonable. (As discussed later, however, an arrest based on a deficient arrest warrant will be upheld if the officer who obtained the warrant reasonably believed the affidavit established probable cause.)

### F. Arrest for Wrong Crime

If a court finds that probable cause existed, the arrest is not rendered unlawful merely because the arresting officer was unsure as to what crime had been committed or because the officer arrested the suspect for another crime which was not supported by probable cause.

### G. Information from Witnesses and Informants

When probable cause is based, in whole or in part, on information from witnesses or informants, the weight of the information depends largely on whether there is reason to believe it is reliable.

Citizen Informants

A citizen informant is defined as a person "who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement." If a person is deemed a citizen informant, his or her information will be presumed reliable if 1) the information was based on the informant's personal knowledge and 2) there was no reason to believe the information was false. Information from one citizen informant may be sufficient to establish probable cause.

Other Informants

Information from other types of informants, such as confidential informants, is not presumed reliable. It is, therefore, necessary to establish that the informant or the informant's information was reliable. This is usually accomplished by corroborating the information in essential respects or proving that the informant has a "track record" of providing accurate information. Information from one confidential informant may be sufficient to establish probable cause if it is reasonable to believe the information is reliable.

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



H. The "Official Channels" Rule

Under the so–called "official channels" rule, an officer may arrest a suspect based solely or in part on information received from other officers or through official law enforcement communications.

This rule is necessary because, as the Supreme Court has explained in US v. Hensley, "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information."

Thus, for example, an officer may make an arrest based on an All Points Bulletin request or wanted flyer even though the arresting officer does not have personal knowledge of the facts which establish probable cause. Likewise, an officer may arrest a suspect based on official information that a warrant for the suspect's arrest is outstanding even though the officer has not seen the warrant.

Information transmitted through official channels by law enforcement personnel cannot be considered in determining the existence of probable cause if 1) the information was false and 2) a law enforcement officer of employee was negligent in causing or permitting such information to be transmitted through official channels.

The main purpose of this rule is to encourage the adoption of accurate and efficient methods of record keeping. It also serves to hold law enforcement agencies accountable for the negligence of their employees. Thus, for example, an arrest based on a report that an arrest warrant was outstanding would be unlawful if the warrant had been recalled and law enforcement personnel were negligent in failing to remove the warrant information from their files.

Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M



# Warrant Arrests

There are essentially two types of arrest warrants: conventional arrest warrants and *Ramey* warrants.

Although warrantless arrests are permitted in many situations, the courts prefer warrant arrests because the warrant procedure insures that "the deliberate, impartial judgement of a judicial officer will be interposed between the citizen and the police to assess the weight and credibility of the information which the complaining officer adduces as probable cause."

<u>Good Faith</u>

If a court subsequently finds that an arrest warrant was not supported by probable cause, the arrest will, nevertheless, be deemed lawful if the officer who obtained the warrant reasonably and in good faith believed the affidavit was sufficient.

<u>Procedure for Seeking an Arrest Warrant</u>

Conventional arrest warrants and *Ramey* warrants are issued by a magistrate upon a showing that probable cause to arrest exists. To establish the existence of probable cause, an officer will usually submit a sworn affidavit which contains specific and reliable information pointing to the suspect's guilt. The affidavit may also include police reports which contain such information.

<u>Doe Warrants</u>

If the name of the person to be arrested is unknown, he or she may be designated by the name John Doe or Jane Doe. However, a Doe warrant must contain a detailed description of the person to be arrested. As the Court of Appeal explained, "The [Doe] warrant should contain sufficient information to permit his identification with reasonable certainty. This may be done by stating his occupation, his personal appearance, peculiarities, place of residence, or other means of identification."

<u>Night Service</u>

A felony arrest warrant may be executed at any time of the day or night. But a misdemeanor warrant may not be executed between the hours of 10 P.M. and 6 A.M. unless 1) the arrest is made in a public place 2) the arrestee is already in custody on another offense or 3) the warrant specifically authorizes night service.

Night–service authorization may be given only if the affiant establishes "good cause." Circumstances which may constitute "good cause" include the following: the warrant can only be safely or successfully executed at night; there is reason to believe the arrestee would flee unless arrested without delay; public safety would be jeopardized if the arrestee was permitted to remain at large while officers waited to execute the warrant during the day; or the arrestee has wilfully violated numerous promises to appear before the court.

Note that the nighttime restrictions do not apply to warrantless arrests.



## Warrantless Arrests

A warrantless felony arrest may be made whenever there is probable cause to believe the suspect has committed a felony. Subject to seven exceptions*, a warrantless misdemeanor arrest is permitted only if, in addition to probable cause, the crime was committed in an officer's presence. If the misdemeanor was not committed in the officer's presence, the usual procedure is to seek an arrest warrant or take the suspect into custody pursuant to a citizen's arrest.

Note, however, that evidence and statements obtained as the result of a warrantless misdemeanor arrest will not be suppressed on grounds the misdemeanor was not committed in an officer's presence. As the court noted in People v. Nance, "Federal constitutional law which California follows exclusively in determining suppression motions based on violation of the Fourth Amendment does not require for a valid warrantless arrest that the offense be committed in the arresting officer's presence."

## Consequences of an Unlawful Arrest

If a court determines that a defendant was unlawfully arrested, it will suppress physical evidence and statements which were obtained as the direct result of the arrest. For example, a court will usually suppress evidence found during a search incident to an unlawful arrest and any statements made by a defendant in response to questioning which occurred at the scene of the arrest. A court will not, however, dismiss criminal charges on grounds the defendant's arrest was unlawful.

The evidence obtained as an indirect result of an unlawful arrest may be suppressed if there was a "sufficiently close relationship" between the discovery of the evidence and the arrest. On the other hand, "where the connection between the [unlawful arrest] and the discovery of the challenged evidence is so attenuated as to dissipate the taint, such evidence is admissible."

---

\*  An arrest for a misdemeanor not committed in the officer's presence is permitted under any of the following circumstances:

1.  There was probable cause to believe the suspect was under the influence of alcohol or drugs and the suspect was involved in an automobile accident or was observed in or about a vehicle which was obstructing a roadway.
2.  There was probable cause to believe the suspect committed an assault or battery on school property during hours when school activities were being conducted.
3.  There was probable cause to believe the suspect was carrying a loaded firearm in violation of Penal Code § 12031.
4.  There was probable cause to believe the suspect violated a domestic violence protective or restraining order and had notice of such order.
5.  There was probable cause to believe the suspect committed an assault upon his or her spouse, cohabitant, or the parent of his or her child.
6.  The suspect was a minor.
7.  The suspect committed an assault or battery upon a firefighter, emergency medical technician, or mobile intensive care paramedic while that person was on duty and engaged in the performance of his/her duties.

Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M



## 1. Confession and Admissions

A statement indirectly resulting from an unlawful arrest will be admissible if the defendant's decision to make the statement was sufficiently an act of free will so as to eliminate the taint of the unlawful arrest. Although no single circumstance is usually determinative on this issue, the following circumstances are important:

### Nature of the Officer's Misconduct

The Supreme Court has stated that the "purpose and flagrance" of the officer's misconduct is especially important in determining whether a subsequent statement will be admissible. Consequently, intentional misconduct is more likely to result in suppression than conduct which was the result of a good–faith mistake in judgement.

### Intervening Circumstances

The causal connection between an unlawful arrest and a subsequent statement may be broken by an intervening circumstance or event, such as the suspect's release from custody before making the statement.

### Miranda Warning

A Miranda warning is "an important factor" in eliminating the taint of an unlawful arrest but it will not, in and of itself, render a subsequent statement admissible.

### Time Lapse

The shorter the time lapse between an unlawful arrest and a subsequent statement the more likely the statement will be deemed a product of the arrest. Although a lengthy time lapse may indicate the statement was an act of free will, such a factor is not very significant in the absence of intervening circumstances.

**Oakland Police Department, Contacts, Detentions, & Arrests, 23 Jul 98, Index No. I—M**



## 2. Fingerprints

Fingerprint records obtained as the direct result of an unlawful arrest cannot be used in a trial on the charge for which the suspect was arrested. For example, if a suspect was unlawfully arrested on a rape charge, the prosecution would be prohibited from presenting testimony that the fingerprints which were taken during booking matched the fingerprints found at the scene of the crime.

Using Fingerprints in an Unrelated Case

Fingerprint records obtained as the result of an unlawful arrest will probably be admissible in a trial on charges which are unrelated to the unlawful arrest.

For example, a burglary suspect was unlawfully arrested and fingerprinted; the fingerprint records would likely be admissible to connect the defendant with a subsequent burglary.

Photographs and Photo Lineups

A photograph taken at a time when the defendant was under illegal arrest will be suppressed at a trial on charges resulting from the arrest. Furthermore, the courts will generally suppress testimony from a witness that he or she identified the photograph in a photo lineup. However, an in–court identification by that same witness will not be suppressed if the witness's courtroom identification rested on an independent recollection of the perpetrator and was not influenced by the unlawful photo lineup.