JOHN A. RUSSO, City Attorney, SBN #129729
RANDOLPH W. HALL, Assistant City Atty., SBN #080142
JAMES F. HODGKINS, Supervising Trial Atty., SBN #142561
CHARLES E. VOSE, Senior Deputy City Atty., SBN #139700
KANDIS A. WESTMORE, Deputy City Atty., SBN 194594
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California  94612
Telephone:  (510) 238-3589, Fax:  (510) 238-6500
25581/518626

Attorneys for Defendants,
CITY OF OAKLAND, OAKLAND
POLICE DEPARTMENT, CHIEF WAYNE
TUCKER, SGT. BERNARD ORTIZ

**UNITED STATED DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MIGUEL ORTEGA, BENJAMIN ORTEGA,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, WAYNE TUCKER, In His Capacity as the Police Chief of the City of Oakland, RAMON J. ALCANTAR, Individually and in his capacity as a Police Officer for the City of Oakland, B. ORTIZ, Individually and in his capacity as a Police Officer for the City of Oakland, DOES 1 THROUGH 200,<br><br>Defendants. | Case No.  C-07-02659 (JCS)<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:   September 19, 2008<br>Time:   9:30 a.m.<br>Dept.:  Courtroom A, 15th Floor<br>The Honorable Joseph C. Spero |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**TABLE OF CONTENTS**

**Page No(s).**

I. INTRODUCTION ...................................................................................................................1
II. LEGAL ARGUMENT ...........................................................................................................2
    A. Plaintiffs lack any evidence to prove their false arrest and excessive force claims against Ortiz, and those claims cannot provide a basis for a §1981 cause of action. ........................................................................................2
    B. Plaintiffs cannot prove sufficient facts to maintain a §1983 claim against Ortiz, Tucker or the City. ......................................................................6
        1. Unreasonable seizure claim against Ortiz. ................................................6
        2. Excessive Force Claim against Ortiz ..........................................................7
        3. First Amendment Claim ............................................................................10
        4. Intentional infliction of emotional distress ...............................................10
    C. The record shows no basis for individual liability on the part of Chief Tucker. .........................................................................................................11
        1. Federal claims .............................................................................................11
        2. State Law Claims .......................................................................................12
    D. Plaintiffs have offered little to no opposition to Defendants' showing that they cannot maintain a *Monell* claim against the City. ..............................13
    E. Plaintiffs have failed to raise a triable issue of fact as to their negligence claim. ..........................................................................................................14

**TABLE OF AUTHORITIES**

**Page No(s).**

CASES

Arpin v. Santa Clara Valley Transportation Agency,
    261 F.3d 912 ................................................................................................................ 8

Kentucky v. Graham,
    473 U.S. 159 (1985) ................................................................................................... 11

Larez v. City of Los Angeles,
    946 F.2d 630 (9th Cir. 1991) ..................................................................................... 12

Meehan v. Los Angeles County,
    856 F.2d 102 (9th Cir. 1988) ..................................................................................... 13

Morgan v. The District of Columbia,
    550 F.Supp. 465 (D.D. 1982), aff'd, 725 F.2d 125 ...................................................... 3

Oppenheimer v. City of Los Angeles,
    104 Cal.App.2d 545 (1951) ....................................................................................... 12

Radobenko v. Automatic Equipment Corp.,
    520 F.2d 540 ............................................................................................................... 9

Trevino v. Gates,
    99 F.3d 911 ............................................................................................................... 13

STATUTES

Penal Code §148 ............................................................................................................ 6, 7

## I. INTRODUCTION

Plaintiffs' opposition to Defendants' Motion for Partial Summary Judgment largely ignores the joint statement of undisputed facts submitted by the parties. This is apparently so because those undisputed facts demonstrate that Defendants are entitled to judgment in their favor as a matter of law. Plaintiffs' cite mostly to disputed facts regarding the circumstances of Benjamin's arrest/detention by Officer Alcantar. Those facts, however, are immaterial to the legal arguments raised by Sgt. Ortiz, Chief Tucker and the City.

While the motion for partial summary judgment did not address claims alleged against Officer Alcantar individually, it did submit that even if there was a constitutional violation with respect to those claims, Plaintiffs have failed to show that the alleged violations were the result of a City policy or custom. In their opposition, plaintiffs made no effort to respond to the City's arguments regarding the *Monell* allegations in the second amended complaint and offered no evidence to support such claims.

Plaintiffs also allege facts in the opposition without citing to their source in the record. Such facts cannot be taken as true. Plaintiffs seem to suggest that Ortiz was involved with the detention of Benjamin. (Oppn. at 2:11-12, citing ¶6 of Ortiz Decl.) It is undisputed, however, that Ortiz detained Miguel and Alcantar detained Benjamin. (JSUF 21, 25, 30, 33, 35), Indeed, Benjamin acknowledged that only Alcantar was involved with his detention and that there were no other officers near Alcantar when he fell to the ground and that no one else besides Alcantar handcuffed him. (Benjamin Depo. at 44:3-19.)

The entire second paragraph on page 2 of the opposition cites to no supporting evidence for the facts alleged. (Oppn. at 2:14-18.) There are likewise no citations to evidence in support of most of the first paragraph. (Oppn. at 2:4-11.) Notwithstanding those problems, Plaintiffs have failed to show that there are **material** facts in dispute relative to the specific claims addressed in Defendants' motion for partial summary judgment.

## II. LEGAL ARGUMENT

**A. Plaintiffs lack any evidence to prove their false arrest and excessive force claims against Ortiz, and those claims cannot provide a basis for a §1981 cause of action.**

Plaintiffs argue that they can establish material facts in dispute to support their §1981 claim yet they offer no evidence that defendants intentionally subjected them to different "punishment or pains" based on their race from those of white citizens. (Oppn. at 9:26.) Instead, Plaintiffs argue without citation to any evidence that there is evidence of an unjustified, unprovoked and unreasonable attack by Ortiz on Miguel Ortega. They make this argument in spite of the undisputed facts showing that Miguel was the aggressor in the situation. It is undisputed that Ortiz saw Miguel coming off the porch to go after Officer Alcantar as he was confronting Benjamin. (JSUF 30.) Ortiz saw Alcantar grab Benjamin and heard Miguel scream at Alcantar telling him to let Benjamin go or he was going to get into it and then came down the steps off the porch. (JSUF 31.) Miguel admitted that he was going to "go out against Alcantar" and that he was stopped from getting to Alcantar by the officer. (JSUF 32.) Plaintiffs even admit this in their opposition. (Oppn. 10:9-11.) Ortiz immediately stepped in and detained Miguel. (JSUF 33.) Benjamin testified that Miguel came out of the house and said not to do anything to Benjamin – that he was his brother. "And he was running, and then Mr. Officer Ortiz knocked him down." (Benjamin Depo. at 44:22-25.) Ortiz viewed the situation as an officer safety concern and it was his job to stop Miguel from interfering with Alcantar arresting Benjamin. (JSUF 34.)

According to the undisputed evidence, there was nothing unprovoked or unreasonable about Ortiz's decision to detain Miguel for interfering with the arrest. Ortiz grabbed Miguel by the arm or back, spun him around and handcuffed him and took him out of the yard and put him in a patrol car. (JSUF 35.) Miguel was so admittedly aggressive during the incident that he testified that while he was being handcuffed, Ortiz asked him if he thought he was a "big man" and he responded by telling him to "just tighten them" twice. (JSUF 45.)

There is no evidence in the record that citizens of other races who aggressively attempt to

-2-

1  interfere with OPD officers while they are in the process of arresting someone are not also detained
2  and handcuffed to protect officer safety. Furthermore, there is no evidence that Ortiz held a taser to
3  Miguel's head as plaintiffs allege. It is undisputed that Ortiz was not carrying a taser that day and
4  that he had not even been trained to carry a taser prior to May 7, 2006. (JSUF 42.) Plaintiffs offer
5  only wild speculation that Ortiz must have been carrying a taser that day. (Oppn. at 19:9-11.)

6      Plaintiffs' witness says he saw a big black officer hold a taser to Miguel's head (JSUF 40),
7  and Ortiz is not a black officer. (JSUF 41.) Like plaintiffs, he is Latino (JSUF 41). Plaintiffs have
8  made no effort to find this alleged big black officer and hence have not named any such person as a
9  defendant in this case. Moreover, Miguel never saw anything held to his head. He simply felt
10 something against his head and believed it was a gun until his cousin told him it was a taser. There
11 is no evidence that any named defendant in this case held a taser to Miguel's head.

12     Therefore, plaintiffs' argument that the "factual evidence is abundant" is belied by the
13 undisputed evidence in the record. Furthermore, it is well established that a claim of false arrest
14 cannot typically provide the basis for a §1981 claim. It follows then that a claim for excessive force
15 which also can be brought under §1983 cannot provide a basis for their §1981 claim. Excessive
16 force, like false arrest, cannot be considered either a racially discriminatory action on a contract or a
17 discriminatory effort to deny plaintiffs their right to sue, be parties, and give evidence. *See Morgan*
18 *v. The District of Columbia*, 550 F.Supp. 465, 467 (D.D. 1982), *aff'd*, 725 F.2d 125.

19     It is the alleged wrongful act that is the focus of this inquiry – false arrest and excessive
20 force. Yet there is no evidence that Ortiz falsely arrested Miguel at all let alone let alone that the
21 arrest was made because of Miguel's race or for the purposes of denying Miguel his right to sue or
22 be a party and give evidence. On the contrary, the arrest was made to stop Miguel from attacking
23 Alcantar.

24     In addition, the amount of force used to stop Miguel who was running toward Alcantar to
25 stop him from arresting his little brother, verbally threatening to "get into it" with Alcantar if he
26 didn't leave his brother alone, was more than reasonable under the circumstances. This is so, even if

1  plaintiff's allegation that he was thrown to the ground when handcuffed is taken as true. (JSUF 36.)

2  Further, there is no evidence that any such force was used because of Miguel's race or for
3  the purposes of denying Miguel the right to sue or be a party and give evidence. On the contrary,
4  the evidence shows that Ortiz's actions were taken to protect officer safety and prevent Miguel
5  from interfering with Benjamin's arrest. This is what any reasonable officer would have done under
6  the circumstances.

7  Plaintiffs next argue that Alcantar's statement to Benjamin about "shoving the flag up his
8  ass" is evidence of discrimination. (Oppn. at 10:26-27.) While that may or may not be relevant to
9  the issue of a claim against Alcantar, it is not relevant to the claim against Ortiz or Chief Tucker
10 because there is no evidence that either of them made such a statement. Therefore, that issue will
11 not be addressed here.

12 Next, Plaintiffs mischaracterize Ortiz's testimony by taking it out of context and misquoting
13 him. They contend that Ortiz intended to cite Benjamin for carrying the flag. (Oppn. at 11:1.) That
14 simply is not true. Moreover, it is unclear how this allegation supports Plaintiffs §1981 claim, as it
15 appears to go to their First Amendment claim. Nevertheless, Defendants will respond.

16 In the testimony cited by Plaintiffs, Ortiz said he was going to cite the person who was
17 carrying the flag. He frequently referred to Benjamin as "the person carrying the flag" or "the flag
18 carrier" instead of using his proper name. (See e.g., JSUF 13, 17.) But it is undisputed that Ortiz
19 decided to cite Benjamin for suddenly stepping from the curb. (JSUF 12 (Ortiz depo at 35:6-20).)
20 There is no evidence that he intended to cite him for carrying the flag.

21 It is undisputed that the officers were assigned to disperse crowds after the Cinco de Mayo
22 festival and they were faced with a crowd of people on the corner who refused to leave. It is
23 undisputed that the officers reported those events to OPD dispatch and requested backup. (JSUF
24 15.) Even Benjamin admits that he was standing on the corner with his cousins with a group of
25 more than 10 people for more than a half hour. (JSUF 2, 9, 10.) If there was racial animosity, it was
26 directed at Ortiz, not plaintiffs as someone in the crowd called Ortiz a "coconut" as he attempted to

-4-

1  disperse the crowd. (JSUF 16.) Ortiz did not say that Miguel or Benjamin called him a coconut. He
2  simply said someone in the crowd called him that.
3       The only other evidence Plaintiffs offer to show racial animus is their unsupported
4  conclusion that "both officers saw Hispanic young persons and concluded they were in the United
5  States illegally." (Oppn. at 11:8.) Such speculative conclusions are not admissible evidence.
6  Plaintiffs cannot testify about what was in the minds of the officers. In addition, witness Preciado's
7  testimony that he heard unidentified officers say "We're going to call Immigration. I hope you all
8  have your green cards," is also insufficient evidence to show racial animus on the part of the
9  defendants. There is no evidence that Ortiz or Tucker ever made such a statement, and Preciado's
10 testimony cannot reasonably be attributed to any officer in particular. It is undisputed that other
11 OPD units responded to the scene. (Regina Harris-Gilyard Decl. at ¶9; JSUF 46.) Again, there is
12 not a scintilla of evidence that any named defendant in this action made any such statement.
13      Plaintiffs' statement that light skinned persons from Mexico have demonstrated racism
14 against their own people of darker skin color is not only unsupported by any evidence, it lacks
15 foundation and is irrelevant to establish racial animus on the part of Ortiz. There is no evidence that
16 Ortiz has a lighter skin color than that of plaintiffs' or that any of his alleged acts were based on
17 such a skin color difference.  This is just more speculation. And the fact that Ortiz neither
18 understands nor speaks Spanish is not evidence that he harbored racial animus against plaintiffs.
19 Plaintiffs' reference to unidentified "research commentaries and news articles" that "speak on the
20 problem of racism among Spanish-speaking people" also lacks foundation, is unsupported by
21 admissible evidence and fails to demonstrate that Ortiz who is not Spanish speaking harbored racial
22 animus against plaintiffs.
23      Finally, Plaintiffs' argument that Alcantar asked Benjamin and Miguel for their green card
24 in Ortiz's presence, even if true, is also insufficient to show any wrongdoing by Ortiz. (Oppn. at
25 11:17-19.) In fact, Plaintiffs misstate the testimony. None of the testimony cited by plaintiffs
26 supports their assertion that such a statement was made in Ortiz's presence. Miguel doesn't even

-5-

REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT                            C07-02659 (JCS)

1  recall who said it. (Miguel depo at 45:11-16.) Indeed, when Benjamin was asked whether Ortiz
2  made any comment about his race, he said he did not remember. (Benjamin Depo. at 73:6-8.)
3  Plaintiffs also misstate Alcantar's testimony. (Oppn. at 11:19-21.) Alcantar denied that he ever
4  mentioned immigration and said Immigration and other units (Gangs and ICE) were there and he
5  believed he heard "Do we need immigration?" or something like that because Immigration was
6  right there with them. (Alcantar Depo. at 68:2-11.) Notwithstanding the issue of what Alcantar said
7  or didn't say, there is no evidence of Ortiz saying anything about immigration.

8  Therefore, Plaintiffs have no evidence of the intentional discrimination they must prove to
9  maintain their §1981 claim against Ortiz or Tucker. Moreover, the false arrest and excessive force
10 claims cannot form the basis of the §1981 claim. Hence, Plaintiffs cannot even establish the first
11 requirement of the test for *Monell* liability against the city – that a violation of plaintiffs' rights
12 under §1981 occurred. In any event, the § 1981 cause of action fails to make any *Monell* allegations
13 against the City. Therefore, Defendants are entitled to judgment in their favor as to Plaintiffs'
14 §1981 claim.

15
16 **B.   Plaintiffs cannot prove sufficient facts to maintain a §1983 claim against Ortiz, Tucker or the City.**

17 **1.   Unreasonable seizure claim against Ortiz.**

18 Plaintiffs wrongly assert that the probable cause for Ortiz's arrest was his belief that
19 Benjamin, not Miguel had committed a Penal Code §148 violation. Citing to JSUF, Plaintiffs once
20 against misconstrue the facts. Ortiz testified that he believed Alcantar (not himself) was going to
21 cite Benjamin (not Miguel) for PC 148 and was going to detain him. (JSUF 29.) As more fully set
22 forth in Defendants' memorandum of points and authorities in support of their Motion for Partial
23 Summary Judgment and above, it is undisputed that Ortiz's probable cause to arrest Miguel was
24 based on his observations that Miguel was going to get into it with Alcantar to stop him from
25 arresting his brother. Whether or not it was a detention or arrest is irrelevant because there was
26 probable cause based on the undisputed facts upon which the parties agree. Plaintiffs' opposition

1  mixes apples with oranges by arguing that there was no probable cause for Alcantar to arrest
2  Benjamin. Whether or not there was probable cause to arrest Benjamin, however, is irrelevant to the
3  question of whether Ortiz had probable cause to arrest Miguel who was admittedly attempting to
4  interfere with Alcantar's arrest of Benjamin.

### 2. Excessive Force Claim against Ortiz

Defendants have fully demonstrated above and in their initial moving papers, that the force used by Ortiz to stop Miguel from aggressively interfering with officer Alcantar's arrest of his brother Benjamin was reasonable under the circumstances. In opposition, Plaintiffs argue that Ortiz was not attempting to achieve any legitimate police objective. They are clearly misguided. Whether or not Miguel was intoxicated or thought to be associated with a gang or whether or not Alcantar's arrest of Benjamin would ultimately be found to be reasonable does not negate the fact that it is undisputed that Ortiz observed Miguel committing a violation of Penal Code §148 (obstructing a police officer in the line of duty) in his presence and stopped him and detained him before he had a chance to attack Alcantar to prevent his brother from being arrested. Miguel showed his aggressive intent towards Alcantar by his words and his actions of running in Alcantar's direction while he was arresting Benjamin.

Plaintiffs spend a significant amount of time arguing that there was no probable cause to arrest Benjamin. The issue for Miguel's claim against Ortiz, however, is not whether Alcantar had probable cause to arrest Benjamin, but whether Ortiz had probable cause to arrest him to protect officer safety and prevent him from interfering with an officer in the line of duty. The undisputed facts on which the parties agree show that Ortiz had such probable cause to arrest Miguel. Thus, contrary to Plaintiffs' assertion, Miguel posed an immediate threat to the safety of Ortiz's fellow officer. And Plaintiffs have cited no legal authority that authorized Miguel to attack Alcantar to prevent him from arresting Benjamin even if he believed the arrest was unlawful. There isn't one scintilla of evidence that Ortiz placed a taser to the back of Miguel's head during the arrest. On the contrary, the only evidence in the record shows that Ortiz could not have been the person who did

1 it, if it even happened at all.

2 With respect to Miguel's failure to provide any evidence of his injuries resulting from the alleged excessive force, Defendants contend that Miguel's self-serving declaration filed in support of the opposition describing his alleged injuries in ways not previously described in the second amended complaint, his deposition, or his discovery responses, and his mother's declaration based on hearsay is insufficient to show damages and should not be considered by the court. If Miguel's injuries were as serious as he now claims they are (even though they weren't so serious at the time of his deposition), or if he had been so violently thrown down the front steps on his back and ribs that he sometimes can't even walk or move, he would no doubt have required medical attention. His recent excuses for not seeking medical attention for such allegedly severe injuries are unavailing. It is commonly known that thousands of American's without medical insurance and with financial hardship go to the county hospital for treatment of serious injuries. His choice not to do so negates his damages claims because he simply has no evidence of such severe injuries.

14 Miguel never produced any evidence of his alleged injuries in response to Defendants' discovery requests. At his deposition Miguel admitted that he asked Ortiz to tighten the handcuffs twice (JSUF 45) – not the request of someone who has just had violent injuries inflicted to his back and ribs. He also admitted in his deposition and in his recent declaration that he did not seek medical attention for his alleged injuries to his back and ribs. (JSUF 61.) These alleged injuries did not prevent him from working at jobs involving the removal of asbestos, grinding cars, working with machinery and cleaning offices and stores. (JSUF 62.) At best, he claimed that he "sometimes" experiences anxiety or stress when he sees police officers. (JSUF 59.) And he never even discussed these allegedly serious injuries with anyone. (JSUF 60.) These allegations without medical records or other evidence of injury are insufficient to establish excessive force. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922.

25 Plaintiffs' attempt to distinguish *Arpin* is unavailing. They essentially argue that Miguel's failure to provide medical records or other evidence of his injuries is overcome because in *Arpin*,

-8-

REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT                                C07-02659 (JCS)

1  the plaintiff did not set forth any specific facts disputing the officer's version of events. (Oppn. at
2  16:1-6.) Here, there are sufficient undisputed facts upon which the parties agree regarding Miguel's
3  arrest. The only difference between Miguel's version and Ortiz's version is that Miguel says he was
4  thrown to the ground and Ortiz says he doesn't believe Miguel was ever taken to the ground.  As
5  previously discussed, even taking plaintiffs' version as true, the force Ortiz used to stop Miguel
6  from attacking Alcantar was reasonable under the circumstances.

7       In addition, declarations filed in opposition to a motion for summary judgment offering
8  contradictions between the deposition testimony given by plaintiff under oath do not create genuine
9  issues of material fact precluding summary judgment. *Radobenko v. Automatic Equipment Corp.*,
10  520 F.2d 540, 544.  Here, Miguel's mother's hearsay declaration is inadmissible to show Miguel
11  actually suffered any injuries resulting from the arrest.[1] Further, her declaration contradicts
12  Miguel's deposition testimony in which he stated that he had not talked to anyone about his
13  injuries. (JSUF 59, 60.) Now his mother testifies in her declaration that he complained to her about
14  his injuries the day after the incident.

15       Further, Miguel's declaration testimony directly conflicts with his deposition testimony. In
16  his deposition Miguel testified that after the incident (up to the date of his deposition) he had not
17  told anyone of his injuries. (JSUF 59, 60.) Now, his declaration in opposition to Defendants'
18  motion states that he talked about his emotional injuries to his mother and his girlfriend
19  immediately after the incident. (Miguel Decl. at 2:3-7, 23-24.) Further, the only place in the SAC
20  where Miguel alleges that he sustained physical injuries is under the sixth cause of action for
21  Battery. (SAC at ¶40.) In response to defendants' interrogatory asking for all facts that supported
22  his contention that any Oakland police officer committed battery on him, he responded only that
23  Benjamin was attacked by Alcantar in his presence. (Charles Vose Decl., Exhibit B at 1:26-2:4, 3:3-
24  4.) The new declarations of Miguel and his mother contradict his discovery responses in which he

---

26  [1] It should be noted that Ana Rosa Ortega is a party in this action as guardian ad litem.

-9-
REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT                                    C07-02659 (JCS)

never stated that he was thrown to the ground or otherwise physically injured by Ortiz or any other officers for that matter. (See Declaration of Charles Vose, Exhibit A.) Such contradictory declarations cannot create an issue of material fact to defeat defendants' summary judgment motion.

### 3.     First Amendment Claim

For the first time, in opposition to Defendants' Motion for Partial Summary Judgment, Plaintiffs allege a violation of their right to freedom of association or assembly. The Second Amended Complaint alleges no such claim. Rather, it alleges a violation of the right to freedom of expression. (SAC at 6:15-16.) A new claim cannot be raised for the first time in Plaintiffs' opposition when they have not sought and obtained leave to amend to add such a cause of action. Moreover, Plaintiffs' arguments are based on misrepresentations of the facts in the record. They contend that Ortiz admits in his deposition that he told Benjamin to throw it (the flag) away. Nowhere in Ortiz's deposition can such an admission be found, and plaintiffs have failed to cite to any portion of the record to support the allegation. Further, even if Ortiz did order the group of people hanging out on the corner for over a half hour to go away from the corner and away from the street, such an instruction would have been proper as his assignment that day was to disperse crowds after the Cinco de Mayo festival. (JSUF 1, 10, 15.) There is no evidence of any conduct on the part of Ortiz that demonstrates an intention to chill Plaintiffs' rights of expression, discriminate against speech on the basis of content, or any other behavior implicated by the First Amendment.

### 4.     Intentional infliction of emotional distress.

Plaintiffs contend that there is an issue of material fact in dispute regarding Miguel's intentional infliction of emotional distress claim against Ortiz because the testimony of Eduardo Ortega indicates that Ortiz placed a taser weapon to the back of Miguel's head but did not use it. (Oppn. at 21:10-11.) Eduardo's testimony indicates no such thing. It is undisputed that Eduardo claims to have witnessed a "big black tough officer" pull a "taser gun" and place it at the back of

1  Miguel's neck. (JSUF 40.) It is further undisputed that Ortiz is not a big black man and was not
2  issued a taser weapon that day. Indeed, he had not been trained or authorized to carry a taser on that
3  day. (JSUF 41.) Eduardo's testimony describes someone who has not been named as a defendant in
4  this case – not Ortiz.  Plaintiff simply jumps to the conclusion that since Ortiz admits that he is also
5  the one who handcuffed Miguel that he must also be the big black officer who allegedly put a taser
6  to his head. This is a baseless assertion. Plaintiffs have acknowledged that there were other officers
7  who arrived at the scene. It is undisputed that Ortiz and Alcantar called for back-up and that four
8  other police units responded to the call. (JSUF 15, 46, Regina Harris-Gilyard Declaration at ¶9,
9  Exhibit B.) Plaintiffs have conducted no discovery in this case to ascertain the identities of those
10 officers or to determine whether or not they were involved with Miguel's arrest. As such, no other
11 officers have been named as defendants in this case. Plaintiffs' failure to identify this alleged "big
12 black officer" does not make Ortiz liable for his actions.

13     Therefore, Plaintiffs' own evidence makes it clear that Ortiz is not the one who allegedly
14 held a taser to Miguel's neck during his arrest. Such evidence of Ortiz's innocence cannot create an
15 issue of material fact as to whether he intentionally inflicted emotional distress on Miguel.

16 **C.     The record shows no basis for individual liability on the part of Chief Tucker.**

17     As developed in Defendants' initial moving papers and below, there is no basis for liability
18 against Chief Tucker on this record, and he is entitled to judgment in his favor as a matter of law.

19     **1.     Federal claims**

20     The Second Amended Complaint indicates that Chief Tucker is being sued in his official
21 capacity as Chief of Police (SAC caption), yet Plaintiffs' vicarious liability arguments suggest that
22 they intend to hold him individually liable. Nevertheless, the allegations in the SAC should control.
23 If he is being sued in his official capacity as alleged in the SAC, the suit against him is in actuality
24 against the City, which is entitled to judgment as argued in Defendants' initial moving papers.
25 *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (official capacity suit is to be treated as suit
26

1  against the entity).[2]

2  There are no allegations in the SAC that Chief Tucker did anything in his individual
3  capacity with respect to the incident, so he is entitled to judgment to the extent that Plaintiff has
4  sued him in his individual capacity on federal claims. See *Larez v. City of Los Angeles*, 946 F.2d
5  630, 646 (9th Cir. 1991) ("Supervisory liability is imposed against a supervisory official in his
6  individual capacity for his 'own culpable action or inaction in the training, supervision, or control
7  of his subordinates,' [citation omitted]; for his 'acquiescence in the constitutional deprivations of
8  which [the] complaint is made,'" [citation omitted]; or for conduct that showed a 'reckless or
9  callous indifference to the rights of others.'" [citation omitted]). Plaintiffs' repeated assertion that
10 Chief Tucker is liable based on vicarious liability is therefore incorrect. Plaintiffs have offered no
11 evidence of any actions on the part of Chief Tucker. And their purported expert's conclusory
12 allegations that the Chief is responsible for an alleged lack of continuing professional training
13 simply because he is Chief of Police is insufficient to meet the requirements set forth in *Larez*.

14 **2.    State Law Claims**

15 There likewise is no basis in the record for liability against Chief Tucker for the state law
16 claims alleged against him. To the extent that his liability is based on vicarious liability, those
17 claims fail because there is no evidence that Chief Tucker had any personal involvement in the
18 incidents at issue in this case. See *Oppenheimer v. City of Los Angeles*, 104 Cal.App.2d 545, 549
19 (1951) ("A chief of police is not liable in damages for the unlawful acts and omissions of the
20 subordinates of the department unless he has directed such acts or personally cooperated in the
21 alleged false imprisonment.") Accordingly, Defendants' motion for partial summary judgment
22 should be granted as to all federal and state causes of action against Chief Tucker.

---

[2] Plaintiffs have also named the Oakland Police Department as a defendant. That too is the same thing as naming the city because it is merely a department within the City, not a separate entity. As such, claims alleged against OPD are to be treated as claims against the City.

-12-
REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT                    C07-02659 (JCS)

|   | **D.** | **Plaintiffs have offered little to no opposition to Defendants' showing that they cannot maintain a *Monell* claim against the City.** |

    In their opposition Plaintiffs have offered no evidence that a city policy or custom was the moving force behind the alleged federal constitutional violations. They focus only on the excessive force claim asserting that Ortiz testified that "the policy is if the person is being compliant there will be no use of force" and that an officer's fingers to the side of a subject's neck would be improper use of force. (Oppn. at 18:9-11.) Plaintiffs essentially argue that the alleged violation of City policies is sufficient to create a dispute of material fact to defeat summary judgment. They are wrong.

    The mere failure to comply with a valid city policy in and of itself does not demonstrate that the failure is a constitutional violation let alone one that is the result of a city policy or custom. Plaintiffs have offered no evidence to show that a city policy maker ratified the use of excessive force in this case or that there is a widespread or persistent custom or practice of the city to allow deviation from its articulated policy regarding the use of force. Plaintiffs' argument that defendant officers were not disciplined for failing to submit a field contact report on this one occasion is insufficient because improper custom may not be predicated on isolated or sporadic incidents. *Trevino v. Gates*, 99 F.3d 911, 918; *Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988) (two incidents are not sufficient to establish a custom). Therefore, plaintiffs' conclusion that this one incident in which the officers were not disciplined for failing to fill out a field contact report "sends a message to officers that they will not need to answer for the actions in the field" does not create an issue of material fact to defeat summary judgment against their *Monell* claim against the city.

    Since Plaintiffs have not challenged any of the city's written policies and have offered no opposition to defendants' arguments regarding their inability to prove a *Monell* violation as to the rest of their constitutional claims, any such arguments have been waived. The evidence discloses no official policy that condones actions in violation of Plaintiffs' civil rights. This absence of proof is fatal to Plaintiffs' claims against the city.

**E.      Plaintiffs have failed to raise a triable issue of fact as to their negligence claim.**

Plaintiffs argue that Ortiz owed a duty to Miguel against false arrest and assert that defendants agree that they have a viable cause of action. This argument is baffling at best. At no time have defendants agreed that Plaintiffs have a viable false arrest cause of action. The rest of plaintiffs' argument is largely unintelligible. It is impossible to determine on what basis Plaintiffs conclude that Ortiz assumed a duty with respect to Miguel that was breached, and they have not asserted that Ortiz owed a duty imposed by statute. Whether the seizure is referred to as a detention or arrest is irrelevant to this issue. It is well established that Ortiz had probable cause to believe Miguel was interfering with Alcantar's arrest of Benjamin and had every right to detain him to protect officer safety. And again, there is no evidence that Ortiz had a taser that day.[3]

Oddly, Plaintiffs go on to argue that Ortiz was acting on his own and is subject to individual liability. None of the discussion thereafter makes any sense, and no legal authority is cited in support of it. Thus, defendants are at a loss for how to respond. Therefore, Plaintiffs have failed to articulate or present admissible evidence to show Ortiz or Chief Tucker owed a particular duty to Miguel that was breached, and as stated above, he has failed to present any evidence of damages to prove a negligence claim.

Dated: September 5, 2008

>      JOHN A. RUSSO, City Attorney
>      RANDOLPH W. HALL, Assistant City Attorney
>      JAMES F. HODGKINS, Supervising Trial Attorney
>      CHARLES E. VOSE, Senior Deputy City Attorney
>      KANDIS A. WESTMORE, Deputy City Attorney
>
>      By:      */ S/ KANDIS A. WESTMORE*
>           Attorneys for Defendants,
>           CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT,
>           WAYNE TUCKER, and BERNARD ORTIZ

---

[3] Even though Ortiz did not carry a taser that day, there is no evidence to support Plaintiffs' contention that the department did not authorize the use of tasers at the Cinco de Mayo event.