**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MIGUEL ORTEGA, et al.,

        Plaintiff(s),

   v.

CITY OF OAKLAND, et al.,

        Defendant(s).

_____/

Case No. C07-02659 JCS

**ORDER GRANTING DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT; DENYING DEFENDANTS'
MOTION TO STRIKE; DENYING
DEFENDANTS' MOTION FOR
SANCTIONS**

## I.    INTRODUCTION

This civil rights action involves allegations that officers of the Oakland Policy Department ("OPD") used excessive force and falsely arrested Plaintiffs Benjamin Ortega and Miguel Ortega shortly following a Cinco de Mayo celebration in Oakland in May, 2006.

Defendants move to strike the Ninth Cause of Action from Plaintiffs' Second Amended Complaint on the grounds that Plaintiffs improperly added this cause of action without leave of the Court.  Defendants also filed a separate Motion for Sanctions. Finally, Defendants Bernard Ortiz ("Ortiz") and Oakland Police Chief Wayne Tucker ("Chief Tucker") move for summary judgment on all claims alleged against them while the City moves for summary judgment on the federal claims.

All parties have consented to the jurisdiction of a United States magistrate judge, pursuant to 28 U.S.C. § 636(a).  On Friday, September 19, 2008 at 10:30 a.m., a hearing on the Motions was held. For the reasons stated below, Defendants' Motion for Partial Summary Judgment is GRANTED. Defendants' Motion to Strike is DENIED.  Defendants' Motion for Sanctions is DENIED.

///

**United States District Court**
For the Northern District of California

## II.    BACKGROUND

On May 7, 2006, Oakland Police Department Officers Ramon Alcantar ("Officer Alcantar") and Bernard Ortiz ("Officer Ortiz") were assigned to patrol International Boulevard and to disperse crowds after a city sponsored Cinco de Mayo festival.  (Joint Statement of Undisputed Facts ("JSUF"), ¶ 1).

Plaintiff Benjamin Ortega ("Benjamin" or "Benjamin Ortega"), then 15 years old, left a cousin's home at 1387 62nd Street to meet with some other relatives and friends at the intersection of 62nd Street and International Boulevard.  JSUF ¶ 6.  While walking to the intersection Benjamin carried with him a Mexican flag.  JUSF ¶ 5.  After going with his cousins to McDonalds, Benjamin and his cousins returned to the corner of 62nd and International.  JSUF ¶ 8.

Benjamin Ortega then returned to 1387 62nd Street for a few minutes before returning to the intersection at 62nd and International, where he and his cousins stayed for more than half an hour.  JSUF ¶ 10.  Benjamin entered the intersection and crossed the street while still carrying the flag.  JSUF ¶ 11.

Officer Ortiz testified that at this point he had decided to cite Benjamin Ortega for suddenly stepping from the curb.  JSUF ¶ 12.  He identified Benjamin as the person carrying the flag.  *Id.* Officer Ortiz also testified that he tried to tell Benjamin to come to him and Officer Alcantar or to stop moving. JSUF ¶ 14.

Benjamin Ortega's testimony regarding the incident is slightly different.  He testified that while he was crossing the intersection with the flag, Officer Alcantar yelled at  him from inside the patrol car, "throw that flag before I shove it up your ass."  JSUF ¶ 25.

Both officers testified that they had told Benjamin to "come here" but that he continued to walk with the group.  JSUF ¶ 28.  The officers  reported to radio dispatch that a "large group" was refusing to leave the corner and requested that two backup units come.  JSUF ¶ 16.  Officer Ortiz testified that while this was going on, someone in the group cussed at him and called him a "Coconut," a term meant to imply that someone is brown on the outside and white on inside.  JSUF ¶ 16.

Officer Ortiz then exited the car and began walking towards the intersection heading towards

the Benjamin Ortega.  JSUF ¶ 17.  Both officers followed the group of young men as they walked down 62nd Street towards 1337 62nd Street.  Neither Benjamin nor Miguel Ortega ("Miguel" or "Miguel Ortega") live at 1337 62nd Street.  JSUF ¶ 63,64.  Benjamin, Miguel, and the others entered the front yard of their cousin's house and Miguel went inside.  JSUF ¶ 18.  Officer Ortiz followed  Officer Alcantar into the yard, believing Officer Alcantar was going to cite and  Benjamin for violation of Penal Code § 148, obstructing a police officer in the line of duty.  JSUF ¶ 29.

Officer Ortiz observed his partner confront Benjamin Ortega, and then his attention was immediately diverted to Miguel, who was coming off the porch moving towards his brother and Officer Alcantar.  JSUF ¶ 30.  Miguel testified that as he saw Officer Alcantar grab Benjamin, he came out of the house and screamed at Officer Alcantar to let Benjamin go or else he "was going to get into it."  JSUF ¶ 31.  Ortiz testified that by the way Miguel was coming off the steps and moving towards Benjamin and Officer Alcantar, he "perceiv[ed] him as a threat to Officer Alcantar at the time."  JSUF ¶ 34.  Officer Ortiz felt it was his job to stop Miguel from interfering with Officer Alcantar's arrest of Benjamin.  JSUF ¶ 34.  As Miguel came down the steps to "go out against Alcantar," he was stopped from getting to him by "the policeman."  Miguel Depo 41:6—11.

Officer Ortiz stated that in detaining Miguel Ortega, he grabbed him by the back of the arm, spun him around, handcuffed him, took him out of the yard and put him into a patrol car.  JSUF ¶ 35. Miguel testified that while he was being handcuffed he was thrown down the stairs to the ground, suffering injuries.  JSUF ¶ 36.  According to Miguel, while being led to the patrol car Officer Ortiz asked him "So you think you're a big man, huh?" to which Miguel replied "just tighten them," referring to the handcuffs. Miguel Depo at 42:20-23.  At this time, other officers began showing up. JSUF ¶ 46.

Miguel also testified that after being handcuffed he felt what he thought was a pistol being placed against his head.  JSUF ¶ 39.  Miguel's cousin, Eduardo Ortega ("Eduardo")  testified that he saw a "big black tough officer" place an electric Taser gun at the back of Miguel's neck.  JSUF ¶ 40. The only evidence regarding Officer Ortiz's skin color is that he is not a "big black" officer and Ortiz's opinion that he is a light complexioned Hispanic of Mexican and Puerto Rican descent. JSUF ¶ 41.  Officer Ortiz was not carrying a Taser that day (JSUF ¶42), nor had he been trained or

1  authorized to carry a Taser at that time. Ortiz Dec. ¶ 5.  Neither officers' assignment that day

2  included the issuance of a Taser.  Joyner Dec. at ¶ 6.

3      After putting Miguel Ortega into the patrol car, Officer Ortiz ran a "wants-and-warrants

4  check" on him which came up negative.  Officer Ortiz estimates that Miguel was in the patrol car for

5  10-30 minutes before being released.  JSUF ¶ 48.  No citations were issued to either Plaintiff.  JSUF

6  ¶ 38.

7      The Oakland Police Department ("OPD") has general order guidelines for use of physical

8  force by officers and for crowd control.  JSUF ¶54.  At the time of this incident, the use of force

9  policy in effect was set forth in the OPD Use of Force Policy Handbook and Departmental General

10  Order (DGO) K-3.  *Id.*  Page 1.4 of that General Order defines reasonable force by the standard set

11  forth in *Graham v. Conner*, 490 U.S. 396.  *Id.*  The OPD policy regarding contacts, detentions and

12  arrests, including probable cause, is contained in the OPD Training Bulletin- General Order A-7.

13  JSUF ¶ 57.

14  **III.    MOTION TO STRIKE AND FOR SANCTIONS**

15      Defendants move to strike Plaintiffs' Ninth Cause of Action against the City and Chief

16  Tucker for Negligent Selection, Training, Retention, Supervision, Investigation and Discipline in

17  violation of 42 U.S.C. section 1983.  SAC ¶ 48-52.  Although this cause of action was included in

18  Plaintiffs' original complaint filed on May 18, 2007, it was omitted from their First Amended

19  Complaint filed on September 27, 2007.  Thereafter, this Court granted Plaintiffs leave to filed a

20  Second Amended Complaint adding Officer Ortiz as a defendant in the action.  On November 27,

21  2007 Plaintiffs filed a Second Amended Complaint ("SAC") adding Officer Ortiz and also

22  reinserting the cause of action for Negligent Selection, Training, Retention, Supervision

23  Investigation and Discipline under 42 U.S.C. section 1983.

24      Defendants request that the Court strike this cause of action because 1) Plaintiffs did not

25  have leave of the Court to reinsert it into their Second Amended Complaint; 2) after serving the

26  SAC, Plaintiffs told Defendants they would dismiss this cause of action; 3) Defendants relied on that

27  promise in not seeking discovery regarding the claim or designating an expert and 4) days before

28  discovery closed counsel for Plaintiffs informed counsel for Defendants that they were refusing to

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    dismiss the claim.

2        The court may strike from a pleading an insufficient defense or any redundant, immaterial,

3    impertinent, or scandalous matter.  Fed. R. Civ. Proc. 12(f).  However, the Court did not specifically

4    prohibit plaintiffs from adding a cause of action.  In any event, because the Court dismisses the

5    relevant claim on the merits, *infra,* the prejudice to defendants is limited.  Therefore, Defendants'

6    Motions to Strike and for Sanctions are DENIED.

7    **IV.    MOTION FOR PARTIAL SUMMARY JUDGMENT**

8        **A.    Legal Standard for Summary Judgment**

9        Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be

10   rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

11   together with affidavits, if any, show that there are no genuine issues as to any material fact and that

12   the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine"

13   issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for

14   the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

15        In order to prevail, a party moving for summary judgment must show the absence of a

16   genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or

17   to a defense on which the nonmoving party will bear the burden of persuasion at trial.  *Celotex Corp.*

18   *v. Catrett*, 477 U.S. 317, 323 (1986); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210

19   F.3d 1099 (9th Cir. 2000).  Once the movant has made this showing, the burden shifts to the party

20   opposing summary judgment to "designate specific facts showing there is a genuine issue for trial."

21   *Celotex*, 477 U.S. at 323.  To establish a "genuine" issue of fact when opposing summary judgment,

22   a plaintiff must "produce at least some significant probative evidence tending to support" the

23   allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

24   The Court need not "scour the record in search of a genuine issue of material fact."  *Keenan v. Allen*,

25   91 F.3d 1275, 1279 (9th Cir. 1996).

26        "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

27   inferences from the facts are jury functions, not those of a judge. . . .  The evidence of the non-

28   movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477

U.S. at 255.  Moreover, the Ninth Circuit has made clear that "police misconduct cases almost

always turn on a jury's credibility determinations" and district courts should grant summary

judgment "sparingly" in this context.  *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

**B.      Section 1983 Claims against Officer Ortiz**

Plaintiffs' First Cause of Action alleges the following claims against Officer Ortiz pursuant

to 42 U.S.C. section 1983:  1) unreasonable seizure; 2) excessive force; 3) violation of Plaintiffs'

First Amendment rights; and 4) violations of Plaintiffs' right to privacy.  Section 1983 provides that

> [e]very person who, under the color of any statute . . . subjects . . . any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and law, shall be liable to the party injured
> in an action at law, suit in equity, or other proper proceeding for
> redress.

42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights but merely provides a

method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271

(1994).  To prevail on a claim under section 1983, a plaintiff must prove two essential elements: (1)

that a right secured by the Constitution and laws of the United States was violated; and (2) that the

alleged violation was committed by a person acting under the color of the law.  *West v. Atkins*, 487

U.S. 42, 48 (1988).

**1.      Unreasonable Seizure**

Plaintiffs assert that Officer Ortiz violated Miguel Ortega's Fourth Amendment right to be

free from unreasonable seizure by arresting Miguel without probable cause.  Defendants request that

the court grant summary judgment for Officer Ortiz because even if the detention was a "seizure,"

Officer Ortiz had probable cause to arrest Miguel for attempting to interfere with an officer in the

course of his duty.[1]

Officer Ortiz' detention of Miguel Ortega did not violate Miguel's Fourth Amendment right

if he had probable cause to believe that Miguel was committing a crime in his presence.  *See United

States v. Watson*, 423 U.S. 411, 417-24 (1976).  "The test for whether probable cause exists is

whether 'at the moment of arrest the facts and circumstances within the knowledge of the arresting

---

[1]Defendants' Motion for Partial Summary Judgment does not assert qualified immunity as a grounds for summary judgment for either Officer Ortiz or Alcantar.  Accordingly the Court does not address that issue.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  officers and of which they had reasonably trustworthy information where sufficient to warrant a

2  prudent man in believing the [plaintiff] had committed or was committing an offense.'" *United*

3  *States v. Jenson*, 425 F.3d 698, 704 (9th Cir. 2005). Furthermore, "warrantless arrests for crimes

4  committed in the presence of an officer are constitutional" under the Fourth Amendment. *Virginia v.*

5  *Moore*, 128 S.Ct. 1598, 1607 (2008).

6      Officer Ortiz had probable cause to arrest Miguel Ortega for attempting to interfere with

7  Alcantar's arrest of Benjamin Ortega in violation of California Penal Code section 148(a). Penal

8  Code section 148(a) prohibits a person from delaying or obstructing a "peace officer...in the

9  discharge or attempt to discharge any duty of his or her office or employment...." Cal. Penal Code §

10  148(a). Plaintiffs assert that Ortiz did not have probable cause to arrest Miguel because the only

11  "probable cause" was "his belief that Benjamin, not Miguel had committed a Penal Code § 148

12  violation. JSUF ¶ 29. Plaintiffs focus on Benjamin Ortega's conduct as the basis for probable cause

13  to arrest Miguel is misplaced. It is undisputed that as Officer Alcantar was detaining Benjamin,

14  Officer Ortiz observed Miguel move towards Alcantar while yelling at him to let Benjamin go or he

15  was "going to get into it." JSUF ¶ 31. Giving Miguel's verbal threats of violence against Alcantar,

16  Officer Ortiz reasonably perceived Miguel as a threat to his partner's safety. JSUF ¶ 34. At that

17  moment, regardless of Benjamin's conduct, Officer Ortiz had probable cause to arrest or detain

18  Miguel Ortega for "delaying or obstructing a peace officer in the discharge or attempt to discharge

19  any duty of his office or employment." § 148 (a). Because there is no genuine issue of material fact

20  that Officer Ortiz had probable cause to detain Miguel, the Court GRANTS summary judgment for

21  Officer Ortiz on Plaintiffs' section 1983 "unreasonable seizure" claim.

22      **2.      Excessive Force**

23      Plaintiffs also assert that in detaining Miguel Ortega, Officer Ortiz used excessive force in

24  violation of the Fourth, Fifth, and Fifteenth Amendments. SAC ¶ 21(a). Defendants request that the

25  Court

26  grant summary judgment for Officer Ortiz on Plaintiffs' excessive force claim on the basis that: 1)

27  the Fifth and Fourteenth Amendments do not apply to Miguel's claims, and 2) under the Fourth

28  Amendment standard, Officer Ortiz used reasonable force to detain Miguel. The Court agrees with

United States District Court

For the Northern District of California

1    Defendants that Miguel's excessive force claim musts be analyzed exclusively under the Fourth

2    Amendment and under that standard Officer Ortiz did not use excessive force.

3                    **a)      Fifth and Fourteenth Amendments**

4           Where, as here, a citizen claims that law enforcement officials used excessive force in

5    making an arrest, the claim is properly analyzed under the Fourth Amendment rather than under a

6    Fifth Amendment substantive due process standard.  *See Graham v. Connor*, 490 U.S. 386, 388

7    (1989).  In some circumstances an equal protection claim under the 14th Amendment may lie where

8    plaintiff is subjected to excessive force on the basis of race.  *See Smith v. City of Fontana*, 818 F.2d

9    1411, 1420 (9th Cir. 1987).  However, as discussed below, no jury could find that Officer Ortiz

10   acted with an intent to discriminate on the basis of race.  At oral argument, counsel for Miguel

11   conceded that her client's Fifth and Fourteenth Amendment claims for excessive force should be

12   dismissed.   Accordingly, the Court considers the Miguel's excessive force claim against Officer

13   Ortiz exclusively under the Fourth Amendment standard.

14                   **b)      Fourth Amendment**

15          Miguel Ortega alleges that in the process of being detained by Ortiz, he was violently thrown

16   down the stairs, hitting his back and ribs against the stairs.  JSUF ¶ 32.  Miguel also claims that after

17   he was detained, Ortiz held a Taser against his neck.  *Id.*

18          "A claim against law enforcement officers for excessive force is analysed under the Fourth

19   Amendment's "objective reasonableness" standard."  *Arpin v. Santa Clara Valley Transportation*

20   *Agency*, 261 F.3d 912, 921 (9th Cir. 2001).  Determining whether the force used was reasonable

21   "requires careful attention to the facts and circumstances of each particular case, including the

22   severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

23   officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

24   *Graham v. Connor*, 490 U.S. 386, 396 (1989).  "The reasonableness of a particular use of force must

25   be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

26   of hindsight."  *Id.*  Moreover, "Not every push or shove, even if it may later seem unnecessary in the

27   peace of a judge's chambers' violates the Fourth Amendment."  *Id.*

28          "In evaluating the nature and quality of the intrusion," courts "must consider the type and

United States District Court

For the Northern District of California

1    amount of force inflicted." *Jackson v. Bremerton*, 268 F.3d 646 (9th Cir. 2001).  In *Jackson*, the

2    Ninth Circuit addressed whether an officer used excessive force in arresting a plaintiff who was

3    interfering with another officer's  "attempt to maintain order."  *Id.* at 653.  The plaintiff's

4    interference "posed an immediate threat to the officers' personal safety and ability to control the

5    group." *Id.*  While arresting the plaintiff, the officer sprayed her hair with a chemical irritant, pushed

6    her to the ground to be handcuffed, and roughly pulled her to her feet.  *Id.* at 652.  Applying

7    *Graham*, the court found that under these circumstances "the use of force was not excessive."  *Id.*

8    Similarly, in *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1096-1097 (9th Cir. 2006),

9    the Ninth Circuit held that use of a control hold on the plaintiff was objectively reasonable where the

10   plaintiff was resisting arrest.  In *Tatum*, the court noted that "while the criminal conduct underlying

11   [plaintiff's] arrest was not severe, he posed a threat...to the police." *Id. See also*, *Eberle v. City of*

12   *Anaheim*, 901 F.2d 814, 819-20 (9th Cir. 1990) (use of finger hold to control belligerent football fan

13   objectively reasonable).

14        Under *Graham*, Officer Ortiz's use of force to detain Miguel Ortega was reasonable under

15   the circumstances.  490 U.S. at 396.  Before Miguel was detained, Ortiz observed him come down

16   off the porch and move towards Officer Alcantar and Benjamin, while yelling at Alcantar to let

17   Benjamin go or he was "going to get into it." JSUF ¶ 31.  Miguel himself testified that he was

18   planning to "go out against Alcantar" before he was stopped by Ortiz.  JSUF ¶ 32.  Thus, like the

19   plaintiff in *Jackson*, Miguel "posed an immediate threat the officers personal safety."  268 F.3d at

20   653.

21        While Plaintiffs concede that "if may have been appropriate to stop Miguel from approaching

22   Alcantar and Benjamin," they contend that the amount of forced used to detain Miguel was

23   excessive.  Pl's Opp. p. 15.  Miguel alleges that in the process of being detained by Ortiz, he was

24   violently thrown down the stairs hitting his back and ribs against the stairs.  *Id.*

25        Even assuming Miguel's allegations are true, in light of these "rapidly evolving

26   circumstances" and the immediate threat to officer safety, "the nature and quality of the alleged

27   intrusions were minimal." *Graham*, 490 U.S. at 386.  Miguel was not beaten, threatened with deadly

28   force, or otherwise abused.

United States District Court

For the Northern District of California

As an additional basis for his excessive force claim, Miguel alleges that after he was detained and handcuffed, and thus not longer a safety threat, Ortiz held an electric Taser gun to the back of his head.  JSUF ¶ 32.  Even assuming that one of the officers present at the scene held a Taser to Miguel's neck, there is insufficient evidence in the record to create a genuine issue of material fact that Officer Ortiz was that officer.  As support for this allegation, Plaintiffs cite the testimony of Eduardo Ortega, who testified who saw a "big Black officer" pull out a Taser and "place it against Miguel's neck.  JSUF ¶ 40.  However, "Officer Ortiz is not a big black man.  He is Mexican and Puerto Rican and believes his skin to be of very light complexion." JSUF ¶ 40.  Moreover, it is undisputed that Officer Ortiz "was not carrying a Taser that day." JSUF ¶ 42.[2]  "Neither Ortiz' nor Officer Alcantar's assignment included the issuance of a taser" and in fact on that date "Officer Ortiz had not been trained or authorized to carry a Taser weapon."  JSUF ¶¶ 42, 43.  In light of these undisputed facts, the mere fact Ortiz was a detaining officer, and that one witness said *one of* the detaining officers held a Taser to Miguel's neck is not enough to create a genuine issue of material fact that  the officer who did so was Officer Ortiz.

Because there is no genuine issue of material fact that the amount of forced used by Officer Ortiz to detain Miguel was excessive, the Court GRANTS summary judgment for Officer Ortiz with respect to Plaintiffs' excessive force claim.

### 3.   Right to Privacy

Plaintiffs' section 1983 claims includes a claim that Officer Ortiz violated their constitutional right to privacy.  Assuming this claim is based on his entry "onto the private property where Benjamin was standing," Ortiz requests that the Court grant summary judgment for him, on the basis that Plaintiffs had no reasonable expectation of privacy in their cousin's front yard.  SAC ¶ 3; Def's

---

[3] Counsel for Plaintiffs tried to back away from this stipulated joint fact at oral argument. At no time prior to oral argument did Counsel make any motion to set aside or modify the Joint Statement of Undisputed Facts.  At oral argument, counsel claimed that before signing the JSUF, she had overlooked the fact that she had entered into this particular stipulation. However, counsel mad not effort, by affidavit or otherwise, to demonstrate that she in fact failed to notice this "error" or that the "error" was excusable.  Accordingly, not only have Plaintiffs made no request to be relieved from this stipulated fact, they have also made no showing that would justify the Court setting aside the stipulation. In any event, as noted above, there is no evidence in the Record that the Taser was held by Officer Ortiz.

**United States District Court**
For the Northern District of California

1   Motion p. 14.  In response to Defendants' Motion, Plaintiffs refer to their discussion regarding

2   unlawful seizure under the Fourth Amendment.  Accordingly, the Court interprets Plaintiffs' right to

3   privacy claim against Officer Ortiz as premised on Miguel's allegedly unlawful seizure under the

4   Fourth Amendment.

5       Under the Fourth Amendment, people have the right "to be secure in their persons, houses,

6   papers, and effects, against unreasonable searches and seizures."  In general, while "an overnight

7   guest in a home may claim the protection of the Fourth Amendment…one who is merely present

8   with the consent of the householder may not."  *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

9       Here, even if Plaintiffs could have had a reasonable expectation of privacy in their own front

10  yard, there is no evidence that either Miguel or Benjamin owned or were overnight guests at the

11  house where they were detained.  Benjamin testified that he lives in San Lorenzo, and Miguel

12  acknowledged that 1387 62nd Street is his cousin's house.  JSUF ¶ 64.  To the extent that this claim

13  is based on the allegations of false arrest, it is without merit as discussed, *supra*.

14      Because Plaintiffs have failed to point to any evidence creating a genuine issue of fact that

15  Officer Ortiz violated their right to privacy, the Court GRANTS summary judgment for Officer

16  Ortiz on this claim.

17              **4.      First Amendment**

18      Plaintiffs final claim against Officer Ortiz under 42 U.S.C. section 1983 is for violating their

19  First Amendment rights of freedom of expression and freedom of assembly.  "The Constitution

20  guarantees Plaintiffs' right to associate for the purpose of engaging in activities protected by the

21  First Amendment."  *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984).  To prevail on a

22  First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff 'was engaged in

23  constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an

24  injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and

25  (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's

26  exercise of constitutionally protected conduct.'"  *Worrell v. Henry*, 219 F.3d 1197, 1212 (citing

27  *Mendocino Environment Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir. 1999).

28  However,  "[a] plaintiff may not recover merely on the basis of a speculative 'chill' due to

United States District Court

For the Northern District of California

1  generalized and legitimate law enforcement initiatives." *Mendocino Environment Center v.*

2  *Mendocino County*, 14 F.3d 457, 464

3  (9th Cir. 1994).

4       In *Bates v. Arata*, 2008 WL 820578 (N.D.Cal. 2008), plaintiffs were arrested during a protest

5  for standing in the roadway blocking vehicular traffic.  Plaintiffs alleged that the officers knew the

6  reason for their protest and that their arrest was punishment "for exercising their First Amendment

7  right to expression."  *Id.* at *24.  In granting summary judgment for a defendant officer, the district

8  court found that "plaintiff's conclusory statements are insufficient to create a triable issue of fact as

9  to defendant Martel's motive," and "without any specific evidence that Martel took plaintiffs'

10 political expression into consideration, no reasonable juror could find that he had intent to chill their

11 protected speech." *Id.*

12      Here, Plaintiffs allege that Benjamin was engaged in protected speech by carrying a Mexican

13 flag and that Officer Ortiz interfered with that speech by telling "Benjamin to throw [the Mexican

14 flag] away."  Pl's Opp. p. 17.  However, there is no evidence in the record that this statement was

15 made by Officer Ortiz.  Although Plaintiffs allege that "Ortiz admits in his deposition that he told

16 Benjamin to throw [the flag] away," Plaintiffs have attached no deposition testimony to this effect.

17 This allegation is also inconsistent with Plaintiffs' Second Amended Complaint, which alleges that

18 Officer Alcantar, not Officer Ortiz, told Benjamin to throw away the flag. *See e.g,* SAC ¶ 3.  Finally,

19 at oral argument, counsel for Plaintiffs stipulated that Ortiz did not tell Benjamin to throw the flag

20 away.

21      Plaintiffs also allege that Officer Ortiz told them "to go away, away from the corner and

22 away from the public street," violating their First Amendment right to assemble.  Pl's Opp. p. 17. As

23 with their allegation regarding the flag, again there is insufficient evidence in the record that Officer

24 Ortiz made this, or a similar statement.  At oral argument, counsel for Plaintiffs cited to testimony

25 from Officer Alcantar stating that "we [referring to Alcantar and Ortiz] told them to get out of the

26 street."  Even if this statement could be somehow attributed to Officer Ortiz, Plaintiffs fail to

27 explain how being ordered to "get out of the street" violates the First Amendment.  With respect to a

28 freedom of assembly claim, there is a significant difference between being told to "go home," and

being told to "get out of the street."  Finally, even if Officer Ortiz did tell Plaintiffs to "go home,"

**United States District Court**
For the Northern District of California

1    Plaintiffs have submitted no "specific evidence that [Officer Ortiz] took plaintiffs' political

2    expression into consideration," when doing so. *Bates*, 2008 WL 820578 at *24.

3        Accordingly, the Court GRANTS  summary judgment for Officer Ortiz on Plaintiffs' First

4    Amendment claim.

5        **C.      Section 1981 Claims against Officer Ortiz**

6        Plaintiffs allege that Officer Ortiz intentionally discriminated against Miguel and Benjamin

7    Ortega on the basis of their race, Hispanic, in violation of 42 U.S.C. § 1981.  Officer Ortiz moves for

8    summary judgment on this claim because 1) section 1981 does not apply to the underlying claims of

9    false arrest and excessive force, and 2) there is no evidence showing any intentional discrimination

10   on account of race.

11       "Section 1981 prohibits racial discrimination through state or private action, and requires a

12   showing of intentional discrimination on account of race."  *Brew v. City of Emeryville*, 138 F.Supp.

13   2d 1217, 1224 (N.D.Cal. 2001), citing *Evans v. McKay,* 869 F.2d 1341, 1344 (9th Cir. 1989).

14   Specifically, section 1981 provides that "[a]ll persons...shall have the same right...to make and

15   enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

16   proceedings." 42 U.S.C. § 1981.

17       Within the Ninth Circuit, claims of false arrest and excessive force do not typically form the

18   basis for section 1981 claims of intentional discrimination.  For example, in *Brew v. City of*

19   *Emeryville*, 138 F.Supp. 2d 1217 (N.D.Cal. 2001), the District Court held that an African-

20   American's claim of false arrest did not provide a basis for a section 1981 claim against a police

21   officer, absent a showing of how plaintiff's arrest could be considered a racially discriminatory

22   effort to deny arrestee of his right to sue, be party, and give evidence.  See also *Morgan v. District of*

23   *Columbia*, 550 F. Supp. 465, 467 (D.D. 1982), *aff'd*, 725 F.2d 125 (D.C. Cir. 1983)(dismissing

24   plaintiffs § 1981 claim based on allegedly false arrest where "plaintiffs have made no allegation of

25   an attempt by the Defendants to impair their legal rights to equal and full access to means of legal

26   recourse.").  In other circuits, however, courts "have held that racially motivated arrests and searches

27   made in the absence of probable cause" come within the rights protected by § 1981 because "they

28   fall within the 'equal benefits' and 'like punishments' clauses of Section 1981(a).  *Cunningham v.*

United States District Court

For the Northern District of California

1  *Sisk,* 136 Fed. Appx. 771, 777 (6th Cir. 2005)(not selected for publication)[3]. *See also*, *Hunt v.*

2  *Jaglowski* 665 F.Supp. 681, 683 (N.D.Ill. 1987) (finding that a cause of action arose under 42.

3  U.S.C. § 1981 where plaintiff "alleges that the police defendants acted with racial animus in

4  depriving Hunt of his civil rights.").

5          Here, even assuming that 42 U.S.C. section 1981 does apply to these facts, the

6  evidence in the record is insufficient to sustain a claim against Officer Ortiz for intentional

7  discrimination.  First, although "racially motivated arrests...made in the absence of probable cause

8  may violate section 1981(a)," as discussed above Officer Ortiz had probable cause to arrest Miguel.

9  Second, there is insufficient evidence in the record that Ortiz' actions towards Plaintiffs were

10  motivated by Plaintiffs' race.  Plaintiffs allege that Officers Ortiz and Alcantar made "menacing and

11  threatening" comments "direct related to [Plaintiffs] being Hispanic."  Pl's Opp. p. 10.  In support of

12  this allegation, plaintiffs cite evidence that Officer Alcantar told Benjamin Ortega to throw the

13  Mexican flag away.  JSUF ¶ 25.  Plaintiffs also cite the testimony of another witness, Genesis

14  Preciado, who testified that he heard an officer say "[w]e're going to call Immigration. I hope you all

15  have your green cards." Preciado Depo 73:17-25; 74:1-3.

16          Even if these statements could be considered sufficient evidence of racial animus, Plaintiffs

17  have not offered evidence that either of them were made by or ratified by Officer Ortiz.  As already

18  noted in the First Amendment discussion above, counsel for Plaintiffs conceded at oral argument

19  that Ortiz did not tell Benjamin to throw the flag away.  There is no evidence that Officer Ortiz ever

20  mentioned calling immigration.  *See* Ortiz Decl. ¶ 7 ("at no time did I make any statements to the

21  effect of that the individuals present better make sure they had their green cards or we would contact

22  the Immigration and Naturalization Service.").

23          Because there is no genuine issue of material fact that Officer Ortiz intentionally

24  discriminated against Plaintiffs on the basis of their race, the Court GRANTS summary judgment for

25  Officer Ortiz with respect to Plaintiffs' section 1981 claim.

26          **D.      Section 1981 and 1983 claims against the City**

27          All of Plaintiffs' section 1981 and section 1983 causes of action against Officers Ortiz and

28

---

[3]The Sixth Circuit rules permit citation to unpublished decisions. 6th Cir. R. 28(e).

**United States District Court**
For the Northern District of California

1   Alcantar are also asserted against defendants City of Oakland and Chief Tucker.  A separate section

2   1983 cause of action for Negligent Selection, Training, Retention, Supervision, Investigation, and

3   Discipline is asserted against the City and Chief Tucker alone.[4]  Defendants request the Court grant

4   summary judgment for the City on these claims because Plaintiffs have not presented evidence

5   sufficient to establish a material issue of fact that the alleged violations of their rights by the

6   individual officers were conducted pursuant to a policy, custom or procedure.  The Court agrees

7   with Defendants that Plaintiffs have failed to point to evidence sufficient to create a genuine issue of

8   material of fact that the City violated Plaintiffs' constitutional rights pursuant to either section 1981

9   or section 1983.

10          Under *Monell*, a municipality cannot be held liable for constitutional injuries inflicted by its

11   employees on a theory of respondeat superior.  *Monell v. Dep't. of Social Services of City of New*

12   *York*, 436 U.S. 658, 691.  "Instead, it is when execution of a government's policy or custom,

13   whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

14   official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

15   at 694.  To establish municipal liability, a plaintiff must satisfy four conditions: "(1) that [the

16   plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a

17   policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right;

18   and (4) that the policy is the moving force behind the constitutional violation.'" *Van Ort v. Estate of*

19   *Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (quoting *Oviatt Pearce*, 954 F.2d 1470, 1474 (9th Cir.

20   1992) (citation omitted)).  The same policy or custom limitation applies to municipal liability under

21   section 1981.  *See Federation of African American Contractors v. Oakland*, 96 F.3d 1204, 1214-15

22   (9th Cir. 1996).  Moreover, "[l]iability for improper custom may not be predicated on isolated or

23   sporadic incidents; it must be founded upon practices of sufficient duration, frequency and

24   consistency that the conduct has become a traditional method of carrying out policy." *Trevino v.*

25   *Gates,* 99 F.3d 911, 918 (9th Cir. 1996).

26          To defeat summary judgment, Plaintiffs must come forward with evidence sufficient to

27   support a finding that the defendant officers' alleged false arrest and excessive force violations were

28

---

[4] This cause of action is also the subject matter of Defendants' Motion to Strike, discussed above.

15

**United States District Court**
For the Northern District of California

1  caused by, at least in some respects, a Oakland policy that amounts to deliberate indifference to

2  Plaintiffs' constitutional rights.  Plaintiffs argue that the City and Chief Tucker failed to adequately

3  train officers Ortiz and Alcantar, and that this failure demonstrates the existence of an informal

4  custom or policy which tolerates and promotes the continuing use of excessive force against citizens.

5  As supporting evidence, Defendants cite to the report prepared by their police procedures expert,

6  Roger Clark, attached to the Declaration of Brenda Posada at Exhibit F.  In his report, Mr. Clark

7  states that:

8      The record in this case indicates that the training provided at the POST Basic
       Academy to all state certified police officers...regarding the use of force...was
9      not followed. The fact that Officers did not follow the proper protocols as
       originally trained, indicates a substantial lack of required continuing
10     professional training.

11 Posada Decl., Exh. F, p. 2. Mr. Clark goes on to opine that "[i]t appears in the record that there was

12 no adequate continuing training or guidance from the City or within the OPD that provided the

13 necessary rules and regulations regarding the use of force designed to prevent incidents of this type."

14 *Id.* at p.3.

15      Defendants object to Mr. Clark's report on the grounds that his conclusions are speculative,

16 vague, ambiguous, and lack sufficient foundation. Fed.R.Evid. 702.  This objection is sustained.  As

17 Defendants point out, Mr. Clark's report does not cite to any specific OPD rules and regulations that

18 were allegedly not followed, nor does Mr. Clark cite to the specific training records of the Officer

19 Defendants.  Instead, Mr. Clark's opinion that there was "no adequate continuing training" appears

20 to be based solely on the fact that "the training provided" regarding use of force "was not followed"

21 in this particular instance.  Posada Decl., Exh. F, p. 2. However,  "isolated or sporadic incidents"–

22 such as the evidence that defendant officers in this case did not follow OPD rules or perform as

23 trained – do not suffice as evidence of custom or policy. *Trevino*, 99 F.3d at 918.  Mr. Clark does

24 not indicate that there is any evidence to support his opinion other that the incidents in question.  He

25 cites no failures in training, and not inadequate OPD rules.  He reviewed no records of the training

26 and supervision that the defendant officers received at OPD.  Mr. Clark's opinion that the City

27 lacked adequate training or guidance amounts to no more than speculation, and under Federal Rule

28

United States District Court

For the Northern District of California

1    of Evidence 702, it is inappropriate to consider his testimony on a motion for summary judgment.[5]

2        Plaintiffs do not challenge any of the written policies submitted by Defendants or allege that

3    these policies are unconstitutional.  Nor have plaintiffs submitted evidence of similar incidents

4    sufficient to show a custom of violating constitutional rights.  Plaintiffs point to no specific failures

5    to train – other than speculation that there was inadequate training.  Based on the evidence in the

6    record, no reasonable trier of fact could find a municipal policy was the "moving force" behind

7    Defendants alleged constitutional violations.

8        **E.    Section 1981 and 1983 claims against the Chief Tucker**

9        Plaintiffs assert that Chief Tucker is vicariously liable for the actions of Officers Alcantar

10   and Tucker under both 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  Pl's Opp, p. 12, 16.  Defendants

11   request the Court grant summary judgment for Chief Tucker on the grounds that Plaintiffs have not

12   presented evidence sufficient to establish a material issue of fact that Chief Tucker was either

13   personally involved in the alleged constitutional violations or that there is a sufficient causal

14   connection between his conduct and the constitutional violation.

15       "Under Section 1983, supervisory officials are not liable for actions of subordinates on any

16   theory of vicarious liability." *Hanson v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989). "A supervisor

17   may be liable if there exists either (1) his or her personal involvement in the constitutional

18   deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

19   constitutional violation." *Id.* (citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).

20   Similarly, "under Section 1981, supervisors may not be held vicariously liable for actions of other

21   employees." *Brooks v. City of Fremont*, 2008 WL 1994889, at *6 (N.D.Cal. 2008).  Instead, as with

22   section 1983 claims, a plaintiff must allege facts which demonstrate "an affirmative link to casually

23   connect the actor with the discriminatory action." *Id.*, citing, *Simpson v. Martin, Ryan, Andrada, &*

24   *Lifter,* 1997 WL 542701, *4 (N.D.Cal. 1997) (finding "[a] supervisor's failure to prevent or remedy

25   _____

26   [5]

27   Defendants also object to Mr. Clark's opinion that "the use of force by Officer Ortiz on Miguel Ortega was grossly excessive and unnecessary," Posada Decl., Exh. F, p. 2.  The use of force policy in place at the time of the incident defines reasonable force by the standard set forth in *Graham*.  490 U.S. 386.

28   Thus, to the extent that Mr. Clark's statement is a legal conclusion, it is inappropriate expert testimony. *See Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("an expert witness cannot give an opinion as to her legal conclusion.")

United States District Court

For the Northern District of California

1   harassment is not an affirmative link making her personally liable").  To the extent Plaintiffs sue

2   Chief Tucker in his official capacity, such a suit "is equivalent to a suit against the governmental

3   entity itself."  *Larez*, 946 F.2d at 646.  Thus, the same analysis that applies to Plaintiffs' *Monell*

4   claims against the City also applies to Chief Tucker.

5        With regard to his individual liability, Plaintiffs allege that Chief Tucker promotes "an

6   organizational culture within the Oakland Police Department and its command staff such that

7   officers feel that they can use excessive force without fear of any discipline."  Pl's Opp., p. 12.

8   However, Plaintiffs do not cite to any specific factual evidence of Tucker's personal involvement or

9   of a causal connection between Tucker's conduct and the alleged constitutional violations.

10       Accordingly, the Court GRANTS summary judgment for Chief Tucker on these claims.

11  **F.      State Law Claims**

12       **1.      Assault and Battery**

13       Plaintiffs' allegations of excessive force also form the basis for their state law assault and

14  battery claims against Officer Ortiz.  Under California law, to prevail on a claim for assault and

15  battery, the plaintiff must establish that the officer used excessive force against him.  *Edson v. City

16  of Anaheim*, 63 Cal. App. 4th 1269, 1273 (1988).  The Fourth Amendment standard of reasonableness

17  also applies under California law.  *See Samon v. Robbins,* 173 F.3d 1150, 1157 n.6 (9th Cir. 1999).

18  As described above, no reasonable jury could find on these facts that the amount of force Officer

19  Ortiz used to detain Miguel Ortega and prevent him from "going at" Officer Alcantar was

20  unreasonable.  Accordingly, the Court GRANTS summary judgment for Officer Ortiz on the assault

21  and battery claims.

22       **2.      California Civil Code section 52.1**

23       Plaintiffs' excessive force claim also forms the basis for their claim against Officer Ortiz for

24  violation of California's Bane Act, codified at  California Civil Code § 52.1.  SAC ¶ 54-58.  The

25  Bane Act allows individuals to sue for damages "where any person or persons, whether or not acting

26  under color of law, interferes by threats, intimidation or coercion, with the exercise or enjoyment by

27  any individuals of rights secured by the Constitution or laws of the United States…."  Cal. Civ. Code

28  §§52.1 (a) & (b).  Specifically, Plaintiffs allege that Officer Ortiz interfered with Plaintiffs' right to

exercise and enjoyment of their civil rights through use of wrongful force.  As demonstrated by the

United States District Court

For the Northern District of California

1   discussion above regarding excessive force, there is insufficient evidence that Officer Ortiz used

2   wrongful force when detaining MiguelOrtega. Accordingly, the Court GRANTS summary judgment

3   for Officer Ortiz on this parallel state law claim.

4         **3.      California Civil Code section 51.7**

5         Plaintiffs allege that Officer Ortiz violated Cal. Civ. Code § 51.7 by committing acts of

6   violence and intimidation against him which were motivated by their race.  As demonstrated by the

7   discussion above regarding racial discrimination under section 1981,  there is insufficient evidence

8   that Officer Ortiz acted with racial animus when he detained Miguel.  Accordingly, summary

9   judgment for Officer Ortiz is GRANTED for this claim.

10        **4.      Intentional Infliction of Emotional Distress**

11        Plaintiffs' SAC also includes a claim against Officer Ortiz for intentional infliction of

12   emotional distress. Under California law, to prevail on a claim of intentional infliction of emotional

13   distress, Plaintiffs must show: "(1) outrageous conduct by the defendant, (2) intention to cause or

14   reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering

15   and (4) actual and proximate causation of the emotional distress." *See, e.g., Cole v. Fair Oaks Fire*

16   *Dept.,* 43 Cal.3d 138, 155 n. 7 (1987).

17        As support for this claim, Plaintiffs allege that "Ortiz placed a Taser weapon to the back of

18   Miguel's head but did not use it" in order to "inflict emotion distress" on Miguel, who "though he

19   was going to die." Pl's Opp. p. 21.  Even if holding a Taser to a Miguel's head without using it could

20   be considered "outrageous," there is no evidence from which a jury could conclude that this was

21   "conduct by the defendant," i.e., Officer Ortiz.  *Id.*  Because there is no genuine issue of material

22   fact with respect to an essential element of Plaintiffs' claim for intentional infliction of emotion

23   distress, the Court GRANTS summary judgment for Officer Ortiz on this claim.

24        **5.      Negligence**

25        Lastly, Plaintiffs allege a state law negligence cause of action against both defendant officers

26   and Chief Tucker. Defendants request that the Court grant summary judgment for Officer Ortiz and

27   Chief Tucker.

28        In order to prevail on a claim for common law negligence against a police officer, Plaintiffs

     must show that (1) the officer owed plaintiff a duty of care; (2) the officer breached the duty by

**United States District Court**
For the Northern District of California

1  failing "to use such skill, prudence, and diligence as other members of the [the] profession

2  commonly possess and exercise," (3) there was a "proximate causal connection between the

3  [officer's] negligence conduct and the resulting injury" to the plaintiff; and (4) the officer's

4  negligence resulted in "actual loss or damage" to the plaintiff. *Harris v. Smith*, 157 Cal.App.3d 100,

5  104 (Cal. Ct. App. 1984). Therefore, "to prevail on the negligence claim, Plaintiffs must show that

6  [Officer Ortiz] acted unreasonably and that the unreasonable behaviour harmed" Miguel. *Price v.*

7  *County of San Diego*, 990 F. Supp. 1230 (S.D. Cal. 1998). Significantly, where a "federal court

8  factually finds that the police officers' conduct was objectively reasonable and grants summary

9  judgment, that decision bars a state negligence action premised upon violation of the same primary

10 right." *Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1181 (E.D. Cal. 2008) (citing *City of Simi*

11 *Valley v. Superior Court*, 111 Cal. App. 4th 1077, 1084 (2003)). *Oppenheimer v. City of Los Angeles*,

12 104 Cal.App.2d 545, 549 (1951). The Court has already found that Officer Ortiz' conduct in

13 detaining Miguel was objectively reasonable and granted summary judgment for Officer Ortiz on

14 that basis. Therefore, under *Sanders*, even if Officer Ortiz owed Miguel a duty of care, Plaintiffs'

15 negligence action against him is barred because it "is premised upon violation of the same primary

16 right." *Sanders*, 551 F.Supp.2d at 1181.

17     Plaintiffs' negligence claim against Chief Tucker also fails. Under California law, "a chief

18 of police is not liable in damages for the unlawful acts and omissions of the subordinates of the

19 department unless he has directed such acts or personally cooperated" in the acts. *Oppenheimer v.*

20 *City of Los Angeles*, 104 Cal.App. 2d 545, 549 (Cal. Ct. App. 1951). As shown above, there is no

21 evidence in the record that Chief Tucker either "directed" or "personally cooperated" in the acts

22 alleged by Plaintiffs. Accordingly, the Court GRANTS summary judgment for Chief Tucker on

23 Plaintiffs' state law negligence claim.

24 **V.    CONCLUSION**

25     For the reasons stated above, Defendants' Motion to Strike and Motion for Sanctions are

26 DENIED. Defendants' Motion for Partial Summary Judgment is GRANTED. The Court dismisses

27 with prejudice claims against Defendants Bernard Ortiz, Chief Wayne Tucker and the City of

28 Oakland as follows: 1) Defendant Bernard Ortiz on the First, Second, Third, Fourth, Fifth, Sixth,

Seventh, Eighth and Tenth causes of action alleged in the Second Amendment Complaint; 2) Chief

Wayne Tucker on the First, Second, Third, Eighth and Ninth causes of action alleged in the Second

Amended Complaint; and 3) the City of Oakland on the First, Second, Third and Ninth causes of

action alleged in the Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: October 8 , 2008

_____
JOSEPH C. SPERO
United States Magistrate Judge